THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS MONROE *et al.*, Defendants-Appellants.

Fifth District    No. 5—83—0490

Opinion filed July 12, 1984.

KARNS, J., dissenting.

Marqua McGull-Billingsley, of Edwardsville, for appellants.

William A. Schuwerk, Jr., State's Attorney, of Chester (Kenneth R. Boyle, Stephen E. Norris, and Frank J. Bieszczat, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a bench trial in the circuit court of Randolph County, defendants Dennis Monroe, Andre Lanton, Dwayne Dodson and Spencer Bouldin were convicted of rape. On appeal, defendants contend that (1) they were not proved guilty beyond a reasonable doubt; (2) the court erred in admitting hearsay evidence; (3) each defendant was denied his right to confront witnesses against him by the trial court's failure to allow the statements of his codefendants to be excised; and (4) the court abused its discretion in refusing to permit defendants to treat Jennifer Stice as a hostile witness. For the reasons which follow, we affirm the judgments of the circuit court.

■ In contending that they were not proved guilty beyond a reasonable doubt, defendants initially argue that complainant's testimony failed to establish the "penetration of the female sex organ by the male sex organ" required to sustain a conviction under the applicable rape statute (Ill. Rev. Stat. 1981, ch. 38, par. 11—1). Complainant testified, however, that each defendant "put his penis in me," and the doctor who examined complainant testified that, in his opinion, complainant had recently had sexual intercourse. We believe that this testimony, taken in its entirety, was sufficient to establish beyond a reasonable doubt the element of penetration required under the statute.

■ Defendants next assert that the State failed to prove beyond a reasonable doubt that the acts complained of were committed by force and against complainant's will. We disagree. The complainant, age 14 at the time of the events in question, testified that defendants, fellow students at her high school, pulled her into a vacant house, pushed her onto a mattress and forced her to engage in sexual intercourse with each of them. While defendants point out that complainant's testimony that she was pulled into the house was not corroborated by any testimony from the girls who had been walking with complainant, the evidence established that these girls, who walked in a different direction when complainant approached some of the defendants in response to their calls, were not in a position to see what had occurred. Moreover, complainant's testimony that she was forcibly assaulted and attempted to resist was corroborated by the presence of a bruise on her face and by the presence of a mark on defendant Lanton's shoulder, where complainant testified she had bitten him. We must also reject defendants' assertion that the fact that complainant earlier sent a note to defendants asking them to meet her at her locker after school tends to create a reasonable doubt as to their guilt; as noted by the People, complainant's desire to converse with defendants is hardly indicative of an accompanying desire to engage in sexual intercourse with them. We note also in this regard that no one contradicted complainant's testimony that she wanted to see defendants in order to dissuade them from following her home by telling them, falsely, that her mother was going to pick her up after school. Finally, while a defense witness testified that she saw complainant wave from the window of the vacant house, and while another defense witness testified that complainant was laughing just following her tests at the hospital emergency room, complainant expressly denied doing either of these things. These conflicts in the evidence were for the trial judge to resolve, and we cannot say that the evidence, considered as a whole, is so improbable as to raise a

reasonable doubt of defendants' guilt.

■ Next, defendants contend that the court erred in admitting the testimony of Sandra Hassard and Kathy Welch, both of whom indicated that complainant told them that she had been raped. Defendants argue that complainant's statements to Hassard and Welch were not sufficiently prompt to bring those statements within the corroborative complaint exception to the hearsay rule. We reject this contention. There is no fixed or definite time limit within which a complaint must be made; what is required is that the complaint be spontaneous and not made as a result of a series of questions to which answers are given. (*People v. Damen* (1963), 28 Ill. 2d 464, 473, 193 N.E.2d 25.) Here, the record discloses that complainant and her friend, Sandy Stice, walked several blocks to the home of Ms. Hassard, who is Sandy Stice's mother, almost immediately after the alleged rapes. When Ms. Hassard saw complainant crying and walking with difficulty, she asked what had happened, and complainant replied immediately that she had been raped. Shortly afterward complainant went next door to the home of her sister, Kathy Welch. Complainant, who still appeared upset, told Ms. Welch that "I have something real important to tell you," and then informed Ms. Welch what had happened. Under these circumstances, we cannot say that complainant's statements to Ms. Hassard and Ms. Welch came so late as to not fall within the corroborative complaint exception to the hearsay rule. Lastly in this regard, while defendants argue that complainant failed to take advantage of a "perfect opportunity" to make a prompt complaint to her friends before she walked to Ms. Hassard's house, complainant testified that she did in fact tell her friends that defendants had "forced her" to have sex with them.

■ The next issue raised by defendants concerns the trial court's failure to allow the pretrial statement of each defendant to be excised of all references to codefendants. While recognizing that this case was tried by a judge and not a jury, defendants urge that they were prejudiced by the court's reading of each defendant's unexcised statement. The record does not support this contention. When defendants raised this issue at trial, the court specifically stated that it "would not consider what one says against the other in this situation." Moreover, in a letter written to defense counsel after the trial and contained in the record on appeal, the trial judge explained that he did not allow the statements to be excised in order to insure "that the Appellate Court should see exactly what the trial Court saw." In that same letter, the court said that it tried this matter "without considering any evidence that would violate the *Bruton* Rule." In light of these statements by

the trial judge, as well as the presumption that the court in a bench trial has considered only competent evidence, we must conclude that no error occurred in this regard. *People v. McNeal* (1977), 56 Ill. App. 3d 132, 138-39, 371 N.E.2d 931.

■■ ■ Lastly, defendants contend that the court erred in not allowing them to treat Jennifer Stice as a hostile witness. The determination as to whether a witness is hostile rests largely in the discretion of the trial court, and the supreme court rule allowing the court to declare a witness hostile (87 Ill. 2d R. 238) applies only to witnesses who, while on the witness stand, prove to be hostile, uncooperative, or unwilling. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 926, 419 N.E.2d 578.) Here, the trial judge indicated that he saw nothing hostile about Jennifer Stice at all, and that any reluctance in her testimony appeared to be attributable to her "awful lack of memory" about the relevant events. Having examined Jennifer Stice's testimony in its entirety, we cannot say that the failure to declare her a hostile witness constituted an abuse of discretion on the part of the trial court.

For the foregoing reasons, the judgments of the circuit court of Randolph County are affirmed.

Affirmed.

JONES, J., concurs.

JUSTICE KARNS, dissenting:

The evidence in this case simply does not establish that the admitted acts of intercourse were done by force and against the will of the prosecutrix; it does prove that each defendant, as well as the minor female participant, is guilty of contributing to the sexual delinquency of a child under section 11—5 of the Criminal Code (Ill. Rev. Stat. 1983, ch. 38, par. 11—5).

A fair consideration of the evidence convinces me that the idea of meeting these boys at the vacant house was conceived by the complainant, who had previously arranged to stay at her girlfriend's, Sandy Stice's, house that night. She sent the note to the boys at lunchtime to meet her after school at her locker. She accompanied them first to the art room, then upstairs to the vacant English room and then to the vacant house. By her own admission sexual touching occurred at the art room and as they walked to Sharon Hiller's house. As they walked to Sharon's house, the complainant was laughing as she conversed with defendants, according to Loretta Davis, a disinter-

ested witness. One defendant asked her to "have sex" in the art room, and she made no complaint to the principal or any teacher.

The complaint of "rape" was made after her sister and Sandy's mother found out, over her protest, about the incident. She wrote at least one note to one of the defendants after the incident. The note expressed her concern with the general rumors around school that her conduct had been voluntary and that she was tired of being called, in her words, "a nigger lover and stuff." Her own testimony strongly suggests that she told Dennis Monroe that she knew he did not rape her, but there was no reason for concern as he would receive probation.

Her girlfriend, Sandy Stice, stood immediately outside the vacant house for the extended period of time that these acts took place, but she heard no scream, no outcries, just muted conversation. When the three girls finally came into the room, Spencer Bouldin and the prosecutrix were engaging in sexual intercourse. No complaint was made, nothing was said for the two minutes before Bouldin left. One of the girls earlier saw her at the front window and she waved. She then said that "she didn't really want to do it but they forced her." She appeared normal and made no complaint. Sandy's mother, Sandra Hassard, testified that she didn't recall the words "rape" or "force" being used, just that she had sex with four boys, and Mrs. Hassard thought that the police ought to know about it.

The statements of the defendants admitted in evidence are not incriminating but are supportive of defendants' claims that the acts of sexual intercourse were voluntary. They were given to the Sparta police separately and are consistent in their versions of what occurred.