THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FINIS E. LEONARD, Defendant-Appellant.

Third District    No. 3—07—0780

Opinion filed May 26, 2009.

Charles M. Schiedel and Lawrence Bapst (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Jeff Terronez, State's Attorney, of Rock Island (Terry A. Mertel and Judith Z. Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

Defendant Finis Leonard was convicted by a jury of the offenses of armed habitual criminal and unlawful possession of a weapon by a felon and sentenced to concurrent terms of imprisonment of 30 years and 10 years, respectively. He appealed. We affirm.

## FACTS

In April 2006, defendant Finis Leonard was charged by information with the offenses of armed habitual criminal (count I) and unlawful possession of a weapon by a felon (count II). 720 ILCS 5/24—1.7(a), 24—1.1(a) (West 2006). Count I alleged that Leonard possessed a firearm and had been convicted of three qualifying offenses between 1998 and 2004, including unlawful possession of a weapon by a felon, aggravated discharge of a firearm, and unlawful possession with intent to deliver a look-alike substance. A jury trial ensued.

The State's first witness was Halbert Jackson. Outside the jury's presence, Jackson informed the trial court that he did not remember the substance of a statement he gave to the police implicating Leonard and that he wanted to exercise his right against self-incrimination. Jackson explained to the court that at the time he made the statement to the police, he had a drug problem and was not sober. The trial court replied that "[b]ad memory, foggy memory, drug infested memory are not Fifth Amendment issues." In the jury's presence, Jackson proceeded to testify that he knew Leonard, that while he was in jail on an unrelated offense the police had asked him about an AR-15 firearm, and that he did not remember what he told the officers. The transcript from the interview did not refresh his recollection.

The transcript, which the trial court admitted, indicated that Jackson told the police that Leonard was in possession of an AR-15 firearm which was located under the couch in Denise Taylor's living room. During his testimony, Jackson repeatedly stated that he could not remember the statement he gave the police, that he "was not sober at the time" and that he had drug problems. The trial court allowed the State to treat Jackson as a hostile witness, to which defense counsel did not object. Jackson also testified that he could not remember being in jail or what he told the police about Leonard. He stated that he did not remember seeing the firearm in People's Exhibit No. 1 or seeing Leonard with a similar firearm. Throughout his testimony, Jackson continued to deny that he remembered the statements he made to the police, although he did acknowledge making a statement. Jackson also stated that he was testifying only because he was subpoenaed and would have preferred not to testify.

Two Rock Island County police officers testified that they interrogated Jackson at the Rock Island County jail and that, based on his statements, obtained and executed a search warrant on Denise Taylor's home, where they recovered an AR-15 firearm and ammunition. They also discovered an order of protection during the search that prohibited Leonard from being at the residence. There was nothing recovered from the home with Leonard's name or anything indicating that he lived there.

Denise Taylor testified that she dated Leonard, that he would occasionally stay at her house, and that he had been at her home earlier the day of the search. Her two daughters lived with her, her son visited several times a week, and her children's friends also visited. She did not know how the AR-15 firearm was brought into her house. At some point, she had seen a gun in a car in which Leonard and another man were sitting but could not identify People's Exhibit No. 1 as the gun she saw. Taylor acknowledged that she had a prior conviction for felony

theft and was charged with unlawful use of a weapon by a felon after the AR-15 firearm was discovered in her home. As part of her plea agreement for the latter charge, she was sentenced to conditional discharge.

Larry Horton testified that Leonard had shown him the AR-15 firearm at Taylor's house, that he had seen Leonard with the gun one week before the police search, and that he had seen Leonard with the gun in a car. Horton acknowledged that he was in jail for possession of a firearm as a felon and that he had not been promised anything in exchange for his testimony, but that he hoped he would receive a lesser sentence.

Finis Leonard testified that he did not live with Taylor but had often spent the night at her house until December 2005, when he and Taylor stopped dating. He continued to go to Taylor's home when she was at work to check on her daughters. He stated that Taylor's children always had friends over and had turned the place into "a party house." He denied ever seeing the AR-15 that was People's Exhibit No. 1. On cross-examination, the following occurred:

"[PROSECUTOR:] And all of the witnesses whoever said otherwise, I believe you said are false. Correct?

[DEFENDANT:] Yes, sir.

[PROSECUTOR:] So when Halbert Jackson said that Finis Leonard was associated with an AR-15 at this address, you're saying that that was false?

[DEFENDANT:] Yes, sir, I am.

[PROSECUTOR:] When Denise Taylor testified that she saw you with a rifle that looked like this, do you agree or disagree with that testimony?

[DEFENDANT:] I disagree with it.

[PROSECUTOR:] When Mr. Horton testified that he saw you with this rifle at Denise Taylor's apartment, you disagree or agree with that testimony?

[DEFENDANT:] I disagree.

[PROSECUTOR:] When Mr. Horton testified that he saw you walking through the Courts with this rifle, the barrel sticking out of the bottom of your coat, you would agree or disagree with that testimony?

[DEFENDANT:] It's a complete fabrication.

[PROSECUTOR:] When Mr. Horton testified that he saw you in a car with this rifle, would you agree or disagree with that testimony?

[DEFENDANT:] I completely disagree with that also.

\* \* \*

[PROSECUTOR:] So when Hal Jackson said that you were at Denise's residence, you agree or disagree with that?

[DEFENDANT:] That I was at her residence?

[PROSECUTOR:] Around the time frame of this search.

[DEFENDANT:] No, I was not there around the time of the search.

[PROSECUTOR:] When Denise said that you were living there with her, staying there, at least, with her off and on around the time of the April 3rd search, would you agree or disagree with that?

[DEFENDANT:] I disagree.

[PROSECUTOR:] And when Mr. Horton said that he visited with you at Denise's house sometime around the area of the search, would you agree or disagree with that?

[DEFENDANT:] That's false.

[PROSECUTOR:] So all of these witnesses are putting you inside Denise Taylor's residence, staying there, and all of them are incorrect. Is that what you're saying?

[DEFENDANT:] Yes, sir, that's what I'm saying."

Following the close of evidence and arguments, the jury deliberated and returned guilty verdicts on both counts. Leonard was subsequently sentenced to concurrent terms of imprisonment of 30 years for armed habitual criminal and 10 years for unlawful possession. He appealed.

## ANALYSIS

Leonard raises several issues on appeal. He challenges his conviction for the offense of armed habitual criminal as violative of the prohibition against *ex post facto* laws, asserts that he was denied a fair trial when Jackson's prior statement to police was admitted as impeachment and as substantive evidence, and argues that the State committed plain error in cross-examining him about the veracity of other witnesses.

We first address whether Leonard's conviction for the offense of armed habitual criminal violates the *ex post facto* clauses of the United States and Illinois Constitutions. Leonard argues that because his prior convictions were an element of the offense of armed habitual criminal and occurred before that offense was enacted, his conviction violates the federal and state constitutional prohibitions against *ex post facto* laws.

■ Section 24—1.7(a) of the Criminal Code of 1961 (Criminal Code) provides:

"(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any

firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

    (1) a forcible felony as defined in Section 2—8 of this Code;

    (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm \*\*\*;

    (3) any violation of the Illinois Controlled Substances Act [(720 ILCS 570/100 *et seq.*)] \*\*\* that is punishable as a Class 3 felony or higher." 720 ILCS 5/24—1.7(a) (West 2006).

■ Both the Illinois and United States Constitutions prohibit *ex post facto* laws. Ill. Const. 1970, art. I, §16; U.S. Const., art. I, §9, cl. 3; §10, cl. 1. An *ex post facto* law is one that (1) makes criminal and punishable an act innocent when done; (2) aggravates a crime, or makes it greater than it was when committed; (3) increases the punishment for a crime and applies the increase to crimes committed before the enactment of the law; or (4) alters the rules of evidence to require less or different evidence than required when the crime was committed. *People v. Morgan*, 377 Ill. App. 3d 821, 823, 881 N.E.2d 507, 508-09 (2007), quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650 (1798). The prohibition against *ex post facto* laws is founded on the basis of a person's right to have fair warning of conduct giving rise to criminal penalties and punishment. *People v. Coleman*, 111 Ill. 2d 87, 93-94, 488 N.E.2d 1009, 1012 (1986). When challenged as violating *ex post facto* prohibitions, recidivist statutes in this state have consistently been found constitutional on the basis that they punish a defendant for a new and separate crime, not for the earlier offense committed before the statute was enacted. *People v. McCrimmon*, 150 Ill. App. 3d 112, 116-17, 501 N.E.2d 334, 337 (1986). In such statutes, the defendant's prior convictions are only an element of the new crime. *McCrimmon*, 150 Ill. App. 3d at 116-17, 501 N.E.2d at 337. When reviewing the constitutionality of a statute, this court presumes that the statute is constitutional, and the party challenging it bears the burden of establishing its unconstitutionality. *People v. Malchow*, 193 Ill. 2d 413, 418, 739 N.E.2d 433, 437 (2000). We review *de novo* the constitutionality of a statute. *Malchow*, 193 Ill. 2d at 418, 739 N.E.2d at 437.

■ Despite Leonard's claims to the contrary, the armed habitual criminal statute is not violative of the constitutional prohibitions against *ex post facto* laws. The statute does not punish Leonard for the offenses he committed before the statute creating the offense of armed habitual criminal was enacted in August 2005. Rather, he was convicted for the separate offense of possessing a firearm after having been convicted of three of the statute's enumerated offenses. At the time he possessed the AR-15 firearm in April 2006, he had fair warn-

ing that, in combination with his prior convictions, he was committing the offense of armed habitual criminal. Leonard's prior convictions were only an element of the offense. He was not punished for acts that occurred prior to the statute's effective date but for the new act of possessing a firearm. Consequently, we find that the statute does not constitute *ex post facto* legislation.

Leonard argues that because the offense of armed habitual criminal is a substantive offense, all the elements of the offense must have occurred after the law was enacted. He relies for support on *People v. Levin*, 157 Ill. 2d 138, 623 N.E.2d 317 (1993), and *People v. Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026 (1995). Although both *Levin* and *Dunigan* concern the habitual criminal statute (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1), Leonard contends that the discussions in those cases that the statute at issue is a sentencing enhancement, not a substantive criminal offense and thus not in violation of *ex post facto* prohibitions, implies that the armed habitual criminal statute, creating a substantive offense, is an *ex post facto* law. He points to the statements made by the *Levin* and *Dunigan* courts in support of the constitutionality of the habitual criminal statute, that the prior conviction evidence is not an ingredient of the main charged offense. *Levin*, 157 Ill. 2d at 149, 623 N.E.2d at 323; *Dunigan*, 165 Ill. 2d at 242, 650 N.E.2d at 1029. From there, Leonard surmises that because the offense of armed habitual criminal is a substantive offense, it violates *ex post facto* prohibitions. His argument is misplaced. The *Levin* and *Dunigan* courts did not express that habitual criminal legislation cannot include prior convictions as elements of an offense; they merely indicated that the statute in question in those cases was a sentencing enhancement, not a substantive offense. Ill. Rev. Stat. 1989, ch. 38, par. 33B—1; *Levin*, 157 Ill. 2d at 149, 623 N.E.2d at 322; *Dunigan*, 165 Ill. 2d at 242, 650 N.E.2d at 1029. In contrast, the armed habitual criminal statute under which Leonard was convicted creates a substantive offense which punishes a defendant, not for his or her earlier convictions, but for the new offense. *McCrimmon*, 150 Ill. App. 3d at 116, 501 N.E.2d at 337. As such, it compares to the unlawful use of weapons by felons statute upheld as constitutional against an *ex post facto* challenge in *McCrimmon*, 150 Ill. App. 3d at 117, 501 N.E.2d at 337. The *McCrimmon* court noted that the statute only criminalized new and additional conduct occurring after the statute's enactment. *McCrimmon*, 150 Ill. App. 3d at 116-17, 501 N.E.2d at 337.

We next consider whether Leonard was denied a fair trial when Jackson's prior inconsistent statement to the police was admitted as impeachment and as substantive evidence. Leonard challenges the trial court's decision to allow the State to treat Jackson as a hostile

witness and argues that Jackson's lack of memory did not sufficiently damage the State's case such that impeachment was necessary through the admission of his prior inconsistent statement to the police. Leonard also argues that use of the statement violated his right to confront witnesses against him as provided for in the confrontation clause because Jackson's inability to recall the substance of his statement to the police denied him the right to cross-examine Jackson.

Initially, the State argues that Leonard has waived this issue by failing to object and to raise the issue in a posttrial motion. Leonard concedes that this issue was not properly preserved but asks this court to review the issue as plain error, pointing to the closeness of the evidence as support for use of a plain error analysis. Under the plain error doctrine, a reviewing court may address unpreserved errors when (1) the evidence is closely balanced such that the guilty verdict may have resulted from the error and not the evidence, or (2) the error is so serious that the defendant was denied a substantial right, affecting the integrity of the judicial process. 134 Ill. 2d R. 615(a); *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005). Before the plain error rule may be applied, however, there must be a plain error. *People v. Nicholas*, 218 Ill. 2d 104, 121, 842 N.E.2d 674, 684 (2005). As discussed below, the trial court did not err in allowing the State to treat Jackson as a hostile witness and in admitting his prior inconsistent statement. Thus, the plain error doctrine is not applicable and we find that this issue is waived.

Supreme Court Rule 238 provides:

"(a) The credibility of a witness may be attacked by any party, including the party calling the witness.

(b) If the court determines that a witness is hostile or unwilling, the witness may be examined by the party calling the witness as if under cross-examination." 188 Ill. 2d R. 238.

Rule 238 applies only to witnesses who prove to be hostile, uncooperative, or unwilling while on the witness stand. *People v. Monroe*, 125 Ill. App. 3d 592, 596, 466 N.E.2d 393, 396 (1984). A party may attack a hostile witness by impeaching him with evidence of a prior inconsistent statement. *People v. Cruz*, 162 Ill. 2d 314, 358, 643 N.E.2d 636, 657 (1994). Before impeaching its own witness with a prior inconsistent statement, a party must first show that the witness's testimony has damaged its position. *People v. Villegas*, 222 Ill. App. 3d 546, 553, 584 N.E.2d 248, 254 (1991). When a witness professes a lack of memory regarding a prior statement, his testimony may be considered damaging. *People v. Speed*, 315 Ill. App. 3d 511, 517, 731 N.E.2d 1276, 1281 (2000). Where a witness claims that he cannot recall a matter at trial, a former affirmation of it should be admitted as a contradiction. *People v. Flores*, 128 Ill. 2d 66, 87, 538 N.E.2d 481, 488 (1989).

Section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) allows a witness's prior inconsistent statement to be admitted as substantive evidence. 725 ILCS 5/115—10.1 (West 2006); *People v. Zurita*, 295 Ill. App. 3d 1072, 1076, 693 N.E.2d 887, 891 (1998). The statement is only admissible as an exception to the hearsay rule if the statement is inconsistent with the witness's testimony at trial, the witness is subject to cross-examination concerning the statement, the statement narrates an event of which the witness has personal knowledge, and the witness either acknowledges under oath that he made the statement or it is established that the statement was accurately recorded. 725 ILCS 5/115—10.1 (West 2006); *People v. Hernandez*, 319 Ill. App. 3d 520, 531, 745 N.E.2d 673, 683 (2001). A prior statement need not directly contradict a witness's trial testimony to be inconsistent. *Zurita*, 295 Ill. App. 3d at 1076, 693 N.E.2d at 891. Inconsistencies may be found in evasive answers or a witness's silence. *Zurita*, 295 Ill. App. 3d at 1077, 693 N.E.2d at 891. This court reviews a trial court's determination as to whether a witness is hostile and whether a prior statement is inconsistent for an abuse of discretion. *Monroe*, 125 Ill. App. 3d at 596, 466 N.E.2d at 396; *Flores*, 128 Ill. 2d at 87-88, 538 N.E.2d at 489.

To be admissible, a prior inconsistent statement must not only comply with the requirements under section 115—10.1 but also satisfy the confrontation clause. *People v. Bueno*, 358 Ill. App. 3d 143, 152, 829 N.E.2d 402, 409 (2005). The confrontation clause requires that a criminal defendant have the right "to be confronted with the witnesses against him." U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8. The confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way the examining party may want. *Bueno*, 358 Ill. App. 3d at 153, 820 N.E.2d at 410, quoting *People v. Sharp*, 355 Ill. App. 3d 786, 793, 825 N.E.2d 706, 711 (2005), quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985). When the declarant appears at trial for cross-examination, the confrontation clause places no restraints on the use of prior statements. *Bueno*, 358 Ill. App. 3d at 152-53, 820 N.E.2d at 410, quoting *Crawford v. Washington*, 541 U.S. 36, 59 n.9, 158 L. Ed. 2d 177, 197 n.9, 124 S. Ct. 1354, 1369 n.9 (2004). Generally, a witness is considered subject to cross-examination when he is placed on the stand under oath and willingly answers questions and the opposing party has an opportunity to cross-examine him. *Bueno*, 358 Ill. App. 3d at 153, 820 N.E.2d at 411, quoting *United States v. Owens*, 484 U.S. 554, 561, 98 L. Ed. 2d 951, 959, 108 S. Ct. 838, 844 (1988). There are no confrontation clause problems merely because the witness's memory problems preclude

him from being cross-examined to the extent the parties would have liked. *People v. Bakr*, 373 Ill. App. 3d 981, 987, 869 N.E.2d 1010, 1016 (2007). We review a trial court's evidentiary rulings for an abuse of discretion. *Bakr*, 373 Ill. App. 3d at 986, 869 N.E.2d at 1015.

■ The trial court did not abuse its discretion when it declared Jackson a hostile witness and allowed the State to impeach him with evidence of his prior inconsistent statement to the police. The record establishes that Jackson was an uncooperative witness who had sufficient memory of being in jail, doing various drugs and asking what he could do to get his bond reduced, but could not remember any details regarding his statements about Leonard. He stated that he was testifying only because he was subpoenaed and would have preferred not to testify. The record further establishes that Jackson's lack of recall of his prior statement was damaging to the State's case. His prior statements connected Leonard to the gun found at Taylor's house and provided the basis for the issuance of the warrant resulting in the gun's seizure. Jackson's failure to acknowledge his prior statement left a vital link in the State's case unconnected. In order to repair the damage to its case, the State was entitled to impeach Jackson's credibility with his prior inconsistent statement. We find no abuse of discretion in the trial court's determination to allow the State to treat Jackson as a hostile witness and to impeach him with his prior inconsistent statement.

In addition, the trial court did not abuse its discretion in admitting Jackson's prior statement as substantive evidence. The statement satisfied the requirements for admission pursuant to section 115—10.1. The statement was inconsistent with Jackson's trial testimony due to Jackson's purported inability to recall various aspects of his prior statement. The inconsistency of Jackson's prior statement is attenuated by Jackson's omission from his trial testimony of any details connecting Leonard with the AR-15. Jackson was available for cross-examination. The record establishes that Leonard was given the opportunity to cross-examine Jackson and did cross-examine him, and that Jackson answered every question directed to him, albeit with arguably insufficient or nonresponsive replies. Jackson's prior statement narrated an event, Leonard's possession of the AR-15, of which Jackson had personal knowledge at the time he made the statement. Lastly, the transcripts reveal that Jackson admitted he made a statement to the police and signed it.

Finally, we find that because Jackson was available for cross-examination, the confrontation clause was not implicated. Jackson took the stand, testified under oath, and responded to the questions presented him. That Leonard was not able to cross-examine Jackson

to the extent he would have liked does not rise to a violation of his right to confront Jackson. Jackson's supposed gaps in memory, while making cross-examination of him challenging, did not preclude the opportunity for cross-examination. Moreover, the record establishes that defense counsel elicited a number of times on cross-examination that Jackson spoke to the officers in order to get his bond reduced and that Jackson would say whatever was needed to get his bond reduced. Thus, the purpose of the confrontation clause was satisfied in that Leonard was able to confront Jackson regarding his adverse testimony. We find there were no confrontation clause concerns and the trial court did not abuse its discretion on confrontation clause grounds. Accordingly, because we find there was no error in the trial court's treatment of Jackson as a hostile witness and in its admission of Jackson's prior inconsistent statement, the plain error doctrine does not apply.

■ The last issue for our consideration is whether the State committed plain error when it cross-examined Leonard about the veracity of other witnesses. Leonard argues that the State improperly cross-examined him by questioning him about the credibility of various witnesses. He asks this court to review the issue as plain error, asserting that the evidence against him was closely balanced.

It is improper to ask a criminal defendant to give an opinion regarding the veracity of other witnesses. *People v. Robinson*, 219 Ill. App. 3d 235, 239, 579 N.E.2d 579, 582 (1991). Such questions to a witness intrude on the jury's function of determining the credibility of the witnesses. *People v. Mitchell*, 200 Ill. App. 3d 969, 977, 558 N.E.2d 559, 565 (1990). In spite of the impropriety of such questioning during cross-examination, it will not be reversible error if it can be considered harmless. *Robinson*, 219 Ill. 2d at 239, 579 N.E.2d at 582. The scope of cross-examination rests with the trial court, and absent an abuse of that discretion, this court will not reverse a trial court's determination regarding the propriety of the cross-examination. *People v. Enis*, 139 Ill. 2d 264, 295, 564 N.E.2d 1155, 1167-68 (1990).

Leonard failed to object to the line of questioning at trial or to raise it in a posttrial motion. Accordingly, he has waived the issue. *People v. Enoch*, 122 Ill. 2d 176, 185-86, 522 N.E.2d 1124, 1129 (1988). We disagree with Leonard's assessment that the evidence was closely balanced and find that the use of the plain error rule is thus precluded. Moreover, although some of the State's questions were improper as they sought Leonard's opinion on the veracity of other witnesses, the questions do not constitute reversible error in light of the strong evidence of Leonard's guilt. Witnesses Taylor and Horton placed Leonard in possession of an AR-15 gun on several occasions. Jackson's prior statement connected the gun with Leonard. The Rock Island of-

ficers testified that they recovered the weapon exactly where Jackson told them it would be. The only witness to deny his possession of the weapon was Leonard. In light of the evidence against Leonard, we conclude that any error resulting from the improper cross-examination was harmless.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOLDRIDGE and SCHMIDT, JJ., concur.