2024 IL App (2d) 230146-U
No. 2-23-0146
Order filed April 22, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CM-1580 |
| PAOLA SARELLANA, | ) ) ) | Honorable Keith A. Johnson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not commit reversible error by admitting the victim's written statement, defendant forfeited her opportunity to cross-examine the interpreter, and the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 2    Defendant, Paola Sarellana, appeals her conviction for domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2020)), contending that (1) the trial court erred in admitting, as substantive evidence, an out-of-court statement of the victim, her husband, written in Spanish, (2) the court denied her the right to cross-examine a court-appointed interpreter about the interpreter's in-court translation of the statement, and (3) she was not proved guilty beyond a reasonable doubt of

making physical contact of an insulting or provoking nature with her husband. Because the court did not commit reversible error by admitting the statement, defendant forfeited or procedurally defaulted her opportunity to cross-examine the interpreter, and the evidence was sufficient to prove that defendant's physical contact with Colon was both insulting and provoking, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The State charged defendant with one count of domestic battery involving physical contact of an insulting or provoking nature, based on her striking, pushing, or grabbing a family or household member, namely her husband, Edward Colon[1] (720 ILCS 5/12-3.2(a)(2) (West 2020)).

¶ 5      The following facts were developed at defendant's bench trial.[2] Just before the first witness (Colon) testified, the trial court commented that an interpreter was present and asked the State if it needed an interpreter. The State responded that it did. The interpreter then offered that, as far as she knew, she was needed because there was "a statement that just a couple of sentences that was originally in Spanish" and "[t]here[ ] [was] a translation and it's accurate in English." The court said it would "wait and see how things are presented during this testimony." The court asked

---

[1]Although the amended complaint referred to the victim as Edward Colon-Vega, he testified at trial that his full name was Edward Colon. Thus, we will refer to him as Edward Colon.

[2]We note that the State requests that we strike in whole or in part defendant's statement of facts for violating Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020)). Although we may strike a statement of facts when it violates Rule 341 (*Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 9), any such improprieties here do not hinder our review (see *Mitchell v. Michael's Sports Lounge*, 2023 IL App (1st) 220011, ¶ 23). Thus, we decline to strike any part of defendant's statement of facts.

if it was necessary to swear in the interpreter for Colon, and the State said no. The court then instructed the interpreter to stay in the courtroom in case she was needed later.

¶ 6 Colon testified that he was married to and lived with defendant. The State asked Colon where he was on August 22, 2021, at around 9 p.m. (the date and time of the alleged incident). Colon responded that he did not "remember what happened." When asked if he or anyone else was at his home that day, Colon answered that he did not remember. Colon also could not remember what he had been doing just before 9 p.m. that day. When asked if he and defendant argued that day, Colon could not remember. Nor could he recall if he and defendant had a physical altercation that day, if she hit or pushed him, or if she slapped him on the left side of his face. He denied that defendant knocked over his 3D printer.

¶ 7 When asked if the police came to his house on August 22, 2021, Colon answered yes. However, he could not remember providing a written statement to the police. The State showed Colon a statement, written in Spanish and bearing his purported signature, and asked if he recognized it. Colon answered no and that he did not recall the statement. However, Colon admitted that his signature was at the bottom of the document. Nonetheless, he persisted in claiming he did not remember giving the statement. He added that he was not "say[ing] [that he did] not make [the statement][,]" but only that he did not remember doing so. Colon further admitted that the statement was in his handwriting.

¶ 8 When the State asked Colon if his statement said that defendant yelled "bad words," defendant's counsel objected to using the statement because it was written in Spanish. The State responded that it could tender defendant a copy of an English translation. Defense counsel further objected that he had not received the English version of the statement in discovery. The trial court

then sustained the objection because the State was reading "something in English from a written statement that [was] in Spanish."

¶ 9    The State then asked if Colon was fluent in Spanish. Colon replied that he was and had spoken Spanish his entire life. When the State asked Colon to read the statement for the record, defense counsel objected that the statement lacked foundation. The State indicated that it was seeking to admit the statement as substantive evidence pursuant to section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.1 (West 2020)). The court found that, because Colon had identified his signature on the statement and admitted that it was in his handwriting, it partially met the requirements for admission under section 115-10.1. The court said it would allow the State to seek to establish the remaining elements under section 115-10.1. To that end, the court ruled that the State could have Colon read the statement in Spanish and have the interpreter translate Colon's words. The court directed the clerk to swear in the interpreter. At that point, defense counsel noted that the interpreter was holding a copy of the written statement and a copy of an English translation. The State then clarified that the latter document was a "translation that was done by an administrative assistant in our office." When the court asked if the translation was ever disclosed to the defense, defense counsel answered no and added that the "translator already has what the State thinks [the statement] says."

¶ 10    The trial court then stated that it "really [did not] care what [the interpreter] [had been] given previously by the State," that it would be relying on what Colon read in Spanish from the statement, and that the "interpreter would be under oath to accurately interpret what [Colon] says in Spanish today." The court added that, because the English interpretation prepared by the administrative assistant was not before the court, it did not care what it said. When the court asked

defense counsel if he needed a continuance because he believed there was a discovery violation, counsel responded that a continuance was unnecessary.

¶ 11 However, defense counsel continued to argue that the State violated discovery by failing to provide the translation to defendant before trial. The State explained that it provided the English translation to the interpreter "to make sure that [it was] an accurate translation." The State added that, by providing the translation to the interpreter, it had merely asked the interpreter what the Spanish statement said. The State further noted that the interpreter did not work for the State but was a neutral party with no bias or motivation. Defense counsel responded that, by giving the interpreter the English translation, the State tainted her perception because she then knew what the State's purported translation was.

¶ 12 The trial court—after initially commenting that it was not sure why the translation was given to the interpreter, who "work[ed] for the [c]ourt"—reiterated that it did not care what the translation said because it "trust[ed] the competency of the interpreter *** that she will not let any document that the State gave her in that regard taint her ability to translate accurately here in court." The court told defense counsel that it would give him "a lot of latitude on [the] cross-examination" of Colon but would not allow any cross-examination of the interpreter. Following a brief recess, the court clarified that (1) it had overruled defendant's objections regarding the written translation, (2) it did not believe that the English translation tainted the interpreter in any way, and (3) there was no discovery violation.

¶ 13 The State then resumed its direct examination of Colon. It asked him if he could read and write Spanish, and he answered yes. When the State asked Colon if the Spanish statement said that defendant yelled "bad words" at Colon, Colon responded that he did not want to answer the question; specifically, he "[did] not feel comfortable" answering because he "[did] not remember

when [he wrote] that one down." When the State repeated the question, Colon said he would not answer. The State then asked the trial court to admonish Colon to answer. The court directed Colon to listen carefully and answer the question or tell the court if he did not understand the question. When the State again asked Colon if his written statement said that defendant yelled bad words at him, Colon refused to answer that question. When the court asked Colon if he understood the question, he said yes. When the State asked the question once more, Colon answered no. When asked if his statement said that defendant threw his "computer" and "3-D printer," Colon said no as to "computer" but yes as to "3-D printer." Colon also admitted that his statement said that defendant "started to push [him]." Colon denied that his statement said that defendant slapped him and then left.

¶ 14 Colon testified that he called 911 on the incident date but could not recall when. When the State sought to admit a recording of the 911 call, the trial court sustained defendant's objection that the State lacked foundation for the recording.

¶ 15 On cross-examination, Colon testified that he could not remember providing the written statement and denied having any recollection of a confrontation between him and defendant.

¶ 16 Officer Thurman[3] of the Aurora police department testified that on August 22, 2021, at around 9 p.m., he was on routine patrol when he responded "to a domestic." When he arrived at the scene, he initially encountered only Colon inside the residence. Thurman described Colon as seeming "upset and a little elevated from what had happened." Thurman observed a "little bit of reddening on the left side of [Colon's] face." Thurman also spoke to defendant at the scene. According to Thurman, defendant said that she had been arguing with Colon and that "she got

---

[3]The officer's first name does not appear in the record.

upset with him and slapped him in the face." She also told Thurman that, as she was leaving the residence to calm down, she knocked over either defendant's computer or his 3D printer.

¶ 17 After finishing with its witnesses, the State moved to admit Colon's written statement, and defendant objected based on a lack of foundation. The trial court, having found that the statement was written and signed by Colon and was inconsistent with Colon's testimony, admitted the statement under section 115-10.1.

¶ 18 The State then asked to publish Colon's statement in English via the interpreter. When defense counsel asked if the interpreter would be a witness, the trial court answered that she would be placed under oath to accurately translate but it would not be "live testimony from a witness" but, rather, a "translat[ion] [of] the written word off the page." The court added that, because she was not a witness, the interpreter would not be subject to direct examination by the State or cross-examination by defendant. Counsel did not object nor did he make an offer of proof regarding what he believed his cross-examination would entail or what evidence would be elicited through cross-examination.

¶ 19 The trial court then had the interpreter sworn in. The interpreter did not sit on the witness stand but stood in the "well of the courtroom." Before the State proceeded, defense counsel noted that the interpreter still possessed a copy of the State's English translation. The interpreter then gave both Colon's Spanish statement and the translation to the prosecutor. When the State asked the interpreter to interpret Colon's Spanish statement, she answered, "[Defendant] started screaming bad words and threw the computer and my 3-D printer, and started to push me and slapped me and she left after." When the court asked the interpreter if that was the entirety of Colon's statement and if she had accurately interpreted it, she answered yes.

¶ 20    The trial court denied defendant's motion for a directed finding.  Defendant offered no evidence.

¶ 21    In finding defendant guilty, the trial court found "much of *** Colon's trial testimony to be not credible in the sense that he testified that he did not remember anything from the date in question."  "Instead of denying that any altercation happened or denying that it happened the way the State claimed, [Colon] essentially just went limp and claimed he did not remember anything."  The court added that its finding that Colon was not credible was bolstered by his demeanor on the stand and how he sometimes avoided answering questions.

¶ 22    The trial court found that Colon testified credibly as to calling 911 and that it was reasonable to infer that Colon called 911 because defendant slapped him in the face during a heated argument.  The court also found that Colon acknowledged that the Spanish statement was in his handwriting and contained his signature.  The court further noted that Colon admitted that his statement mentioned the 3D printer and that defendant pushed him.  Thus, the court found that the statement supported its finding that defendant made physical contact with Colon during the argument.

¶ 23    The trial court further found that Officer Thurman testified credibly that he responded to the altercation between defendant and Colon.  The court noted Thurman's testimony that Colon seemed upset and had a little reddening on the left side of his face, which the court found to be consistent with his having been slapped.  The court also pointed to Thurman's testimony that defendant admitted at the scene that she had argued with Colon and slapped him in the face.

¶ 24    The trial court next addressed whether the physical contact was of an insulting or provoking nature.  In finding that it was, the court relied on the evidence that Colon called 911, the police responded to the scene, Colon appeared upset, and Colon gave a statement regarding defendant's

physical conduct. Based on the totality of that evidence, the court inferred that defendant knowingly made contact of an insulting or provoking nature. Thus, the court found defendant guilty of domestic battery.

¶ 25 The trial court denied defendant's motion for a new trial and sentenced her to six months' conditional discharge. Defendant, in turn, filed this timely appeal.

¶ 26                                  II. ANALYSIS

¶ 27 On appeal, defendant contends that (1) the trial court erred in admitting Colon's written statement where the State failed to confront Colon with the inconsistencies between his statement and his testimony and therefore failed to lay a proper foundation for admission of the statement under section 115-10.1 of the Code; (2) she was denied her sixth amendment right of confrontation where she was not allowed to cross-examine the interpreter even though the State provided the interpreter with an English translation of defendant's statement and the State used the interpreter's in-court translation of Colon's statement to impeach Colon; and (3) the State failed to prove beyond a reasonable doubt that Colon was insulted or provoked by her conduct.

¶ 28                    A. Admission of Colon's Written Statement

¶ 29 We first address defendant's assertion that the trial court erred in admitting Colon's written statement under section 115-10.1 of the Code. Section 115-10.1(a)(b)(c)(2)(A) provides, in pertinent part:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

*** 

            (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

            (A) the statement is proved to have been written or signed by the witness." 725 ILCS 5/115-10.1(a)(b)(c)(2)(A) (West 2020).

¶ 30      Unlike the rule allowing the use of a prior inconsistent statement merely to impeach a witness, section 115-10.1 provides for the substantive admission of a prior inconsistent statement. *People v. Guerrero*, 2021 IL App (2d) 190364, ¶ 46. A prior inconsistent statement is admissible as substantive evidence if the requirements of section 115-10.1 are met. *Guerrero*, 2021 IL App (2d) 190364, ¶ 49. To be admissible, the statement must be inconsistent with the witness's testimony and the witness must be subject to cross-examination. *Guerrero*, 2021 IL App (2d) 190364, ¶ 52.

¶ 31      A witness's prior statement need not directly contradict his trial testimony to be considered inconsistent within the meaning of section 115-10.1. *People v. Flores*, 128 Ill. 2d 66, 87 (1989). Where a witness claims that he cannot recollect a matter, his former affirmation of it should be admitted as a contradiction. *Flores*, 128 Ill. 2d at 87. Accordingly, the prior statement of a witness who professes at trial a memory loss may be admitted under section 115-10.1. *Flores*, 128 Ill 2d at 87. Further, inconsistencies may be found in evasive answers or a witness's silence. *People v. Leonard*, 391 Ill. App. 3d 926, 934 (2009).

¶ 32      The foundational requirements for admission of a prior inconsistent statement as substantive evidence under section 115-10.1 are the same as those for admission of a prior inconsistent statement merely to impeach a witness. *Guerrero*, 2021 IL App (2d) 190364, ¶ 55. That procedure requires the questioner to (1) direct the witness to the time, place, and

circumstances of the statement, (2) use pointed questions to confront the witness with the content of the prior statement, and (3) give the witness an opportunity to explain the inconsistency. *Guerrero*, 2021 IL App (2d) 190364, ¶ 45. Once the impeaching party lays the required foundation, he must complete the impeachment. *Guerrero*, 2021 IL App (2d) 190364, ¶ 45. If the witness denies making the statement, the impeaching party offers extrinsic evidence showing the witness made the statement. *Guerrero*, 2021 IL App (2d) 190364, ¶ 45. If the witness admits making the statement, that completes the impeachment, and no extrinsic evidence is required. *Guerrero*, 2021 IL App (2d) 190364, ¶ 45.

¶ 33     A trial court's determination of whether a statement is inconsistent for purposes of section 115-10.1 is reviewed for an abuse of discretion. *Leonard*, 391 Ill. App. 3d at 934.

¶ 34     Here, defendant contends that the State failed to lay the proper foundation for admission under section 115-10.1 because it did not properly confront Colon with the inconsistencies between his prior written statement and his trial testimony.[4]  We disagree.

¶ 35     When the State asked about the incident involving defendant and him, Colon persisted in claiming that he could not recall anything about the incident. When asked specifically if he could recall whether (1) he and defendant argued, (2) they had a physical altercation, (3) she slapped him in the face, or (4) she pushed him, Colon claimed he could not recall.

¶ 36     When the State asked Colon if he had provided a written statement about the incident, he replied that he could not remember. When shown the statement and asked if he recognized it, Colon answered no and did not recall giving it. Although he acknowledged that the statement was

---

[4]We note that defendant does not dispute that Colon's statement was in fact inconsistent with his trial testimony.

in his handwriting and his signature was at the bottom, he maintained that he did not remember giving the statement. He clarified that he was not saying that he did not make the statement but only that he did not remember doing so. By showing Colon the statement, the State directed Colon to the time, place, and circumstances of the statement. Further, the State clearly asked pointed questions about the statement's content. Finally, the State allowed Colon to explain the inconsistency between the statement and his testimony that he did not recall the events recounted in the statement. Thus, the State laid a proper foundation for the substantive admission of the statement under section 115-10.1.

¶ 37    Defendant's assertion that Colon was not confronted with the statement because it was in Spanish and he testified in English is meritless. Colon testified that he was fluent in both reading and writing Spanish. Because he was allowed to read the Spanish statement and would certainly have understood what it said, he was confronted with the statement and given a proper opportunity to explain the inconsistencies between the statement and his testimony.

¶ 38    Even if the trial court erred in admitting Colon's statement under section 115-10.1, such error was harmless. See *People v. Wilson*, 2012 IL App (1st) 101038, ¶¶ 37, 55. The improper admission of evidence is harmless where there is no reasonable probability that, if the evidence had been excluded, the outcome would have been different. *People v. Brown*, 2014 IL App (2d) 121167, ¶ 28. When deciding whether an error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction, (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction, or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. *Brown*, 2014 IL App (2d) 121167, ¶ 28.

¶ 39    Here, there is no reasonable probability that, if Colon's statement had been excluded, the result of the trial would have been different. Defendant was charged with domestic battery for making physical contact of an insulting or provoking nature with a family member (Colon). 720 ILCS 5/12-3.2(a)(2) (West 2020). To prove a defendant guilty of domestic battery under section 12-3.2(a)(2) of the Criminal Code of 2012 (Criminal Code) (*id.* § 12-3.2(a)(2)), the State must prove that the defendant (1) intentionally or knowingly, (2) without legal justification, (3) made physical contact of an insulting or provoking nature, (4) with a family or household member. The question of whether contact is insulting or provoking is an objective inquiry. *People v. Davidson*, 2023 IL 127538, ¶ 16. "Put another way, it is the nature of the contact, not the actual impact on the victim, that must be established." *Davidson*, 2023 IL 127538, ¶ 16. Therefore, whether the victim subjectively found the contact insulting or provoking is not necessary to establish that the defendant committed this form of battery. *Davidson*, 2023 IL 127538, ¶ 17.

¶ 40    Even apart from Colon's written statement, the evidence overwhelmingly established that defendant committed domestic battery against Colon, her husband. When Thurman arrived at the scene, he learned that defendant and Colon had had an argument and that defendant had left the house to calm down. Defendant admitted that she slapped Colon in the face during the argument. Thurman observed some reddening of the left side of Colon's face. The redness certainly corroborated defendant's admission that she slapped Colon. Being slapped by one's domestic partner during an argument is certainly insulting. Also, a slap hard enough to leave a mark was likely to provoke a reasonable person in Colon's position to retaliate. Accordingly, even if Colon's written statement had been excluded, there would have been overwhelming evidence that defendant committed domestic battery. Thus, any error in admitting the statement was harmless.

¶ 41                    B. Defendant's Right of Confrontation

¶ 42   We next consider whether defendant was denied her sixth amendment right to confront a witness against her. In making this contention, she first asserts she was denied her sixth amendment right to confront the interpreter regarding the English translation that the State provided to her before trial.  Second, she posits that the confrontation clause was violated when the State was allowed to use the interpreter to impeach Colon without being subject to cross-examination.  The State responds that the confrontation clause did not apply because the interpreter was not a testimonial witness.  Alternatively, the State asserts that, even if defendant was denied her sixth amendment right of confrontation, any error was harmless beyond a reasonable doubt.

¶ 43   The sixth amendment to the United States Constitution provides that, in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against her. *People v. Palomera*, 2022 IL App (2d) 200631, ¶ 31 (citing U.S. Const., amend. VI).  The right of confrontation includes the opportunity to cross-examine to demonstrate bias, and that right is satisfied when the defendant is permitted to expose to the jury the facts from which they, as triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. *Davis v. Alaska*, 415 U.S. 308, 318 (1974).

¶ 44   Generally, when evidence is excluded or a line of questioning is denied by the court, the defendant must ordinarily set forth an offer of proof to provide the trial court, an opposing party, and the appellate court an adequate opportunity to review the nature and substance of the excluded evidence. *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 147. Offers of proof are essential in cases where evidence will not otherwise come before the court, as it allows the reviewing court the opportunity to determine if the exclusion was proper. *Id.* It is well-settled that a defendant's failure to make an adequate offer of proof results in forfeiture of the issue on appeal. *People v. Staake*, 2017 IL 121755, ¶ 51.

¶ 45    The record reflects that defense counsel failed to object to the trial court's decision that the court-appointed interpreter would be placed under oath but would not be subject to cross-examination regarding her translation of Colon's written statement. Counsel also, importantly, failed to make an offer of proof regarding the nature and substance of the testimony that would have been elicited through the cross-examination of the interpreter. If defense counsel had concerns about bias of the court-appointed translator, counsel had the opportunity to present an alternative translation or to call his own interpreter to testify as to the proper translation through an offer of proof. See *People v. Carmona-Olvera*, 363 Ill. App. 3d 162, 167-68 (2005) (holding that a defendant has the right to offer a competing translation of his statement). Because counsel failed to make such an offer, we cannot determine if the failure to allow cross-examination of the court-appointed interpreter was improper. Thus, without deciding whether the court-appointed interpreter was a witness subject to cross-examination, we conclude that defendant has forfeited or procedurally defaulted this issue.

¶ 46    Forfeiture aside, we agree with the State that even if there was a denial of the right to cross-examine, any error was harmless beyond a reasonable doubt.[5] A confrontation clause violation is subject to harmless error analysis. *People v. Stechly*, 225 Ill. 2d 246, 304 (2007). The test is

---

[5]We note that, although we have already held that any error in the admission of the statement under section 115-10.1 was harmless, the harmless-error standard is "somewhat higher" for constitutional error than for mere "evidentiary error" (*In re E.H.*, 224 Ill. 2d 172, 180 (2006)). "Because of the different standards of review, there could theoretically exist a narrow set of cases in which admission of the same evidence is harmless if considered as an evidentiary error, but not harmless if evaluated pursuant to the constitutional error standard." *E.H.*, 224 Ill. 2d at 181.

whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict. *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008). To determine if an error is harmless for constitutional purposes, we may (1) focus on the error to determine whether it might have contributed to the conviction, (2) examine the other properly admitted evidence to determine whether it overwhelmingly supported the conviction, or (3) determine whether the improperly admitted evidence was merely cumulative or duplicated properly admitted evidence. *Rolandis G.*, 232 Ill. 2d at 43.

¶ 47    Here, in focusing on whether any error in denying defendant an opportunity to cross-examine the interpreter might have contributed to the conviction, we find no indication in the record that the translation was not accurate. Nor is there any indication in the record that the interpreter violated her statutory and ethical obligations to translate Colon's statement accurately.[6]

---

[6]Being court certified, the interpreter was subject to both statutory requirements as well as a code of ethics. *People v. Castellano*, 2020 IL App (1st) 170543, ¶ 70; *People v. Resendiz*, 2020 IL App (1st) 180821, ¶ 45. As for statutory requirements, section 2 of the Criminal Proceeding Interpreter Act (725 ILCS 140/2 (West 2020)) provides that a court-appointed interpreter "shall be sworn to truly interpret or translate all questions propounded or answers given as directed by the court." As for ethical obligations, the Illinois Supreme Court has set forth a Code of Interpreter Ethics for all interpreters working in the Illinois courts. *Resendiz*, 2020 IL App (1st) 180821, ¶ 46. Canon I provides, in pertinent part, that an interpreter "shall render a complete and accurate interpretation *** without altering, omitting, or adding anything to the meaning of what is stated or written, and without explanation." Ill. S. Ct. Code of Interpreter Ethics, canon 1, at 4 (eff. Nov. 20, 2020). Further, the commentary to Canon 1 adds that interpreters are "obligated to apply their

See *United States v. Perez*, 651 F.2d 268, 273 (5th Cir. 1981) (court-appointed interpreters are "court functionaries [who] stand somewhere between an expert witness called by the court and the court reporter"; "[a]s to such persons, the fundamental question is normally one of qualification, not of veracity or fidelity," and the latter two qualities are assumed absent "special circumstances"). More importantly, defendant never made an offer of proof as to how she would have cross-examined the interpreter and what such inquiry could be expected to show regarding the accuracy of the in-court translation. Thus, we cannot say that the trial court's refusal to allow defendant to cross-examine the interpreter regarding the accuracy of her translation somehow contributed to defendant's conviction.

¶ 48    Additionally, the evidence apart from Colon's statement overwhelmingly supported defendant's conviction. As discussed, Thurman testified that defendant admitted slapping Colon during a domestic argument. Further, Thurman testified that the left side of Colon's face had some reddening. Defendant also told Thurman that she had to leave the house to calm down. This evidence clearly supported the trial court's finding that defendant had slapped Colon during a domestic altercation. Thus, any constitutional error in denying defendant the opportunity to cross-examine the interpreter was harmless beyond a reasonable doubt.

¶ 49                              C. Sufficiency of the Evidence

¶ 50    Lastly, we turn to defendant's contention that the evidence was insufficient to prove an essential element of domestic battery as charged—that Colon was insulted or provoked by being slapped. We disagree with defendant.

---

best skills and judgment to faithfully preserve the meaning of what is said in court." Ill. S. Ct. Code of Interpreter Ethics, canon 1, Commentary, at 5 (eff. Nov. 20, 2020).

¶ 51 A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Moore*, 2023 IL App (2d) 220289, ¶ 43. When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moore*, 2023 IL App (2d) 220289, ¶ 43.

¶ 52 As discussed, to prove a defendant guilty of domestic battery under section 12-3.2(a)(2) of the Criminal Code (720 ILCS 5/12-3.2(a)(2) (West 2020)), the State must prove that the defendant (1) intentionally or knowingly, (2) without legal justification, (3) made physical contact of an insulting or provoking nature (4) with a family or household member. Here, defendant contends solely that the State did not prove beyond a reasonable doubt that Colon was insulted or provoked by being slapped.

¶ 53 Our supreme court has recently addressed the proof needed under the battery statute, section 12-3(a) of the Criminal Code (*id.* § 12-3(a)), to satisfy the element that the physical contact was of an insulting or provoking nature. *Davidson*, 2023 IL 127538, ¶ 13. In doing so, the supreme court held that the clear and unambiguous language of section 12-3(a) demonstrated that the question of whether contact was insulting or provoking is an objective one. *Id.*, ¶ 16. Put another way, it is the nature of the contact, not the actual impact on the victim, that must be established. *Id.* Thus, the trier of fact is asked to determine whether a reasonable person under the circumstances would have found the physical contact insulting or provoking. *Id. Davidson*'s holding, of course, applies to the identical insulting-or-provoking-contact element of domestic battery under section 12-3.2(a)(2) of the Criminal Code (720 ILCS 5/12-3.2(a)(2) (West 2020)).

Thus, the State was required to prove that a reasonable person in Colon's position would have found the slap insulting or provoking.

¶ 54     The evidence, when viewed in the light most favorable to the State, clearly established that element. The slap occurred during a heated domestic argument and prompted Colon to call 911. When Thurman arrived, he could see that Colon seemed very upset. Further, Thurman observed reddening on Colon's face, consistent with his having been slapped. Being slapped by one's domestic partner during an argument is certainly insulting. Further, a slap hard enough to leave a mark was also likely to provoke a reasonable person in Colon's position to retaliate. The evidence proved beyond a reasonable doubt that the slap was both insulting and provoking to someone in Colon's position.[7] Thus, defendant was proved guilty of domestic battery as charged.

¶ 55                                 III. CONCLUSION

¶ 56     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 57     Affirmed.

---

[7]Even were the State required to prove that Colon himself subjectively felt insulted or provoked by the slap, the evidence was sufficient to show that he was.