THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISAAC ZURITA, Defendant-Appellant.

Second District No. 2—97—0320

Opinion filed April 13, 1998.

Lawrence C. Marshall, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

Following a jury trial, the defendant, Isaac Zurita, was found guilty of attempted murder (720 ILCS 5/8—4(a), 9—1 (West 1994)), armed violence (720 ILCS 5/33A—2 (West 1994)), aggravated battery with a firearm (720 ILCS 5/12—4.2(a)(1) (West 1994)), and aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(1) (West 1994)) and sentenced to 16 years' imprisonment. On appeal, the defendant argues that (1) the trial court erred in refusing to admit the prior inconsistent statements of several witnesses as substantive evidence; and (2) the trial court erred in finding that he was not eligible for a "good time" credit in serving his sentence. We reverse and remand for a new trial.

On December 27, 1995, the defendant and Rogelio Montoya were indicted on charges of attempted murder, armed violence, and aggravated battery. An additional charge of aggravated discharge of a firearm was later brought against the defendant and Montoya by information. All of these charges arose out of a shooting incident that took place on December 13, 1995.

On this date, two separate groups of young men were shopping in the Gurnee Mills Shopping Center in Gurnee. One group consisted of Rogelio Montoya, Miguel Arizmendi, Jose Cordova, and the defendant (the Montoya group). The other group consisted of Daniel Mandujano, Jonathon Sharp, Ryan Doyle, and the victim, Jeremy Urbanik (the Urbanik group). Some of the individuals in the Montoya group had allegiances to the "Latin Kings" gang, while some of the individuals in the Urbanik group had allegiances to the rival "Orchestra Albanies" gang. When the two groups encountered each other inside the mall, an argument ensued and the two groups decided to take the matter outside. Once the two groups arrived outside, several gunshots were fired, and the victim was struck in the neck by a .25-caliber bullet.

At the scene of the shooting, Gurnee police officers found spent shell casings in the area of the parking lot where the Montoya group had been standing. One of the casings was from a 9-millimeter cartridge, and two other casings were from .25-caliber cartridges. The police also found holes in a wall and a window of the mall.

The defendant was arrested on December 15, 1995. The police found a round of .25-caliber cartridges in the car that he was driving at the time of his arrest. After waiving his *Miranda* rights, the defendant gave the police a written statement regarding the incident. The defendant told the police that, while he and his friends were eating inside the mall, one of the individuals in the Urbanik group gave

Montoya "dirty looks." The two groups proceeded out of the mall, at which time one of the men in the Urbanik group stated, "I will do you right now, let's go." At this point, the man lifted up his sweater and pulled out a gun.

After the man in the sweater pulled out a gun, Montoya immediately fired several shots at the Urbanik group. The defendant turned and began to run away, firing two shots from a .25-caliber gun over his shoulder as he fled from the Urbanik group. The defendant explained that he fired these shots because he feared that he would be shot. The defendant then got into his vehicle with Miguel Arizmendi and left the scene. The defendant told the police that he later went to the Waukegan lakefront and threw his gun into Lake Michigan.

Gurnee police officers interviewed all four of the men who were part of the Urbanik group. Each of these individuals, including the victim, told the police that Montoya had incited the gang dispute and had fired a weapon. Each of these witnesses identified Montoya from an array of photographs. After taking these witnesses' statements, the police arrested Montoya.

At trial, the State called each of the men in the Urbanik group. Two of these witnesses, Jonathon Sharp and the victim, testified that there was absolutely no doubt that Montoya fired the shot that struck the victim. Moreover, all four witnesses testified that the only person whom they actually saw shoot a gun was Montoya. Three of the witnesses, Mandujano, Doyle, and the victim, testified that, notwithstanding their prior police statements, they now believed that the defendant had been one of the instigators of the incident and that they had seen him standing next to Montoya in a posture suggesting that he had a gun.

Daniel Mandujano testified that he was one of the members of the Urbanik group on the date in question. He testified that the defendant was one of the members of the Montoya group and that he was flashing gang signs and uttering gang slogans. Once the groups went outside the mall, he saw Montoya pull out a gun and fire from about 100 feet away. Mandujano thought that he heard three or four shots but did not remember exactly how many shots were fired. Mandujano did believe that the first shot he heard was deeper than the others. Although he saw the defendant standing next to Montoya when Montoya fired his gun, he never saw the defendant with a gun or saw the defendant take any action that looked as though he was shooting. On cross-examination, Mandujano admitted that, in his signed police statement, he had stated that Montoya was the person responsible for shooting and provoking the incident.

Ryan Doyle testified that he was also one of the members of the Urbanik group on the date in question. He testified that all four people in the Montoya group, including the defendant, were making gang references prior to the shooting. When the groups got outside the mall, he saw both Montoya and the defendant raise their arms in the air, as if they had weapons. Doyle testified that he heard shots fired but was unsure as to the number of shots. He testified that the defendant was not running at the time the shots were fired.

On cross-examination, Doyle was confronted with the signed statement he had given the police. Although Doyle had testified on direct examination that he saw two men with weapons and that the defendant might have fired a gun, he only told the police that Montoya had pulled out a gun and fired at the victim. Doyle also acknowledged that he had told police that Montoya was the individual making the gang signs and references. Additionally, contrary to his trial testimony in which he was unsure how many shots were fired, the defendant told the police that he had heard four or five shots at first and then heard two shots a bit later.

The victim testified that, once the two groups arrived outside, he heard both Montoya and the defendant yelling gang slogans. The victim stated that he then saw Montoya pull something from his waistband and shoot him. He had no doubt that he was shot by a bullet fired by Montoya. Although he believed that the defendant had something in his hand, he could not identify the object as a gun and never saw the defendant fire a shot. The victim was taken to a hospital, and a single bullet was removed from his neck under local anesthesia.

On cross-examination, the victim was confronted with the statements he had given to the police after the incident. The victim acknowledged that he had made these statements. In these statements, the victim told police that Montoya was the individual who had confronted him and his friends. Unlike his testimony at trial, the victim did not tell the police that the defendant was yelling gang epithets or that he saw an object in the defendant's hand.

During his case in chief, the defendant sought to introduce as substantive evidence the police statements of Doyle, Mandujano, and the victim. The defendant argued that these statements were admissible pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115—10.1 (West 1994)) as prior inconsistent statements. The defendant argued that these prior statements were inconsistent with the witnesses' trial testimony regarding the defendant's involvement in the shooting. The defendant also requested the trial court to tender Illinois Pattern Jury Instructions,

Criminal, No. 3.11 (3d ed. 1992) (hereinafter IPI Criminal 3d), which discusses the substantive use of prior inconsistent statements.

The trial court denied the defendant's request to admit the witnesses' police statements into evidence and also refused to tender IPI Criminal 3d No. 3.11 to the jury. The trial court held that, because the various witnesses did not deny making their prior statements to the police, they could not be considered "inconsistent" for purposes of section 115—10.1. Although the trial court did not permit the introduction of the statements as substantive evidence, it did permit the jury to consider the statements for purposes of impeachment.

Following deliberations, the jury found the defendant guilty of attempted murder, armed violence, aggravated battery with a firearm, and aggravated discharge of a firearm. Following a sentencing hearing, the trial court sentenced the defendant to 16 years' imprisonment. The trial court also made an express finding that the defendant had caused "great bodily harm" and would therefore not be entitled to any "good time" credit towards his sentence. Following the denial of his postsentencing motion, the defendant filed a timely notice of appeal.

The defendant's first contention on appeal is that the trial court erred in refusing to admit as substantive evidence the police statements of Doyle, Mandujano, and the victim. The defendant argues that these statements were inconsistent with their trial testimony in several important respects and were therefore admissible pursuant to section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 1994)). The defendant concludes that the trial court's failure to admit this evidence was highly prejudicial, and he requests that we reverse his conviction and remand the cause for a new trial.

■ Section 115—10.1 of the Code provides for the substantive admissibility of prior inconsistent statements in criminal cases. *People v. Posedel*, 214 Ill. App. 3d 170, 176 (1991). Under section 115—10.1, such statements are admissible when (1) the prior statement is inconsistent with the witness's trial testimony; (2) the witness is subject to cross-examination regarding the prior statement; (3) the prior statement is within the witness's personal knowledge; and (4) the prior statement is acknowledged by the witness at trial. 725 ILCS 5/115—10.1 (West 1994); *People v. Hastings*, 161 Ill. App. 3d 714, 719 (1987). As noted above, the trial court found that the witnesses' trial testimony was not inconsistent with their prior statements to the police.

■ The prior statement of a witness does not have to directly contradict the testimony given at trial to be considered "inconsistent" within the meaning of section 115—10.1. *People v. Flores*, 128 Ill. 2d

66, 87 (1989). Rather, a prior statement is inconsistent with a witness's trial testimony when it has a tendency to contradict the trial testimony. *People v. Lee*, 243 Ill. App. 3d 745, 749 (1993). Inconsistencies may be found in evasive answers, silence, or changes in position. *Flores*, 128 Ill. 2d at 87. The determination of whether a witness's prior testimony is inconsistent with his present testimony is left to the sound discretion of the trial court. *Flores*, 128 Ill. 2d at 87-88.

Where a witness claims to be unable to recollect a matter at trial, a former affirmation of the matter should be admitted as a contradiction. *Flores*, 128 Ill. 2d at 87; *People v. Morales*, 281 Ill. App. 3d 695, 701-02 (1996). Additionally, a prior statement is deemed inconsistent when it omits a significant matter that would reasonably be expected to be mentioned if true. *People v. Conley*, 187 Ill. App. 3d 234, 244 (1989). The inconsistency may consist of the failure to speak of a matter entirely when it is shown that the witness had an opportunity to make a statement and that a person would reasonably be expected under the circumstances to do so. *Conley*, 187 Ill. App. 3d at 244; M. Graham, Cleary & Graham's Handbook of Illinois Evidence, § 613.2, at 509 (6th ed. 1994).

■ Applying these principles to the instant case, we agree with the defendant that there were critical inconsistencies between the trial testimony of Doyle, Mandujano, and the victim, and their prior police statements. At trial, Doyle testified that he observed the defendant draw a gun and lift his arm in a shooting motion while standing next to Montoya. During his police statement, however, Doyle did not mention the defendant as the shooter and instead identified Montoya as the individual who fired a gun. Similarly, Doyle testified at trial that the defendant was flashing gang signs and using gang epithets; in his police statement, Doyle attributed all this conduct to Montoya.

Contrary to the State's assertions, we do not believe that Doyle's trial testimony was merely a "clarification" of his statements to the police. Doyle's police statement completely lacked any reference to the defendant as a participant in the crime. Such a statement is in stark contrast to Doyle's detailed trial testimony regarding the defendant's conduct. Doyle's sudden memory of the defendant's participation in the incident at trial certainly appears to be a change of position tending to contradict his statements to police. See *People v. Jefferson*, 260 Ill. App. 3d 895, 910 (1994). If the defendant had in fact participated in the offense as Doyle testified at trial, it would be reasonable to expect that Doyle would have mentioned this in his statement to the police. See *Conley*, 187 Ill. App. 3d at 244. We believe that his failure to do so presented an "inconsistency" for purposes of

section 115—10.1. *Flores*, 128 Ill. 2d at 87; *Jefferson*, 260 Ill. App. 3d at 910.

We additionally note that there was an even more striking inconsistency between Doyle's trial testimony and his prior police statement regarding the number of shots that were fired. At trial, Doyle testified that he could not remember how many shots were fired. However, in his police statement, Doyle specifically stated that he had heard four or five shots, then a brief pause, followed by an additional two shots. As noted above, where a witness claims to be unable to remember a certain detail, a prior statement describing the detail should be admitted as a contradiction. *Flores*, 128 Ill. 2d at 87; *Lee*, 243 Ill. App. 3d at 749. We therefore conclude that Doyle's prior police statement regarding the number of shots fired was inconsistent with his testimony at trial for purposes of section 115—10.1. The admission of this prior statement was particularly relevant in light of the fact that it tended to corroborate the defendant's testimony that he fired two shots only after Montoya had first fired several shots.

As detailed above, the trial testimony of Mandujano and the victim was also inconsistent with their statements to the police in several important respects. At trial, both men testified that the defendant had flashed gang signs and yelled gang slogans prior to the incident. However, in their statements to the police, they attributed this conduct to Montoya and did not mention the defendant. Additionally, the victim testified at trial that the defendant had lifted up his arm and appeared to have something in his hand; however, in the victim's police statement, he stated that he did not see what happened at the time of the shooting. For the reasons elaborated above, we are compelled to conclude that such discrepancies are also inconsistent for purposes of the statute. See *Jefferson*, 260 Ill. App. 3d at 910.

Having determined that the prior police statements of Doyle, Mandujano, and the victim were inconsistent with their trial testimony, we briefly turn to the remaining three statutory requirements for substantive admissibility. First, all three witnesses were present at trial and therefore subject to cross-examination concerning their prior statements. 725 ILCS 5/115—10.1(b) (West 1994). Second, these prior statements were clearly within the witnesses' personal knowledge, as they were present at the scene at the time of the shooting. 725 ILCS 5/115—10.1(c)(2) (West 1994). Finally, at trial each of the witnesses acknowledged making these prior statements. 725 ILCS 5/115—10.1(c)(2)(B) (West 1994). As each of the statutory requirements of section 115—10.1 has been satisfied, we conclude that the trial court abused its discretion in refusing to admit the prior statements as substantive evidence.

Moreover, we conclude that the failure to admit the prior inconsistent statements cannot be dismissed as harmless error. The defendant testified at trial that he had no role in any of the events until after he saw one of the members of the Urbanik group display a gun. The defendant asserted that he fired two shots over his shoulder in self-defense as he was running away from the area. The excluded witnesses' statements to the police tend to corroborate the defendant's claim of self-defense. These statements contain no mention of the defendant flashing gang signs or taking any role in the shooting. In view of the State's reliance on the trial testimony of these witnesses to discredit the defendant's theory of self-defense, it was especially crucial that the jury be allowed to consider the prior inconsistent statements as substantive evidence. See *People v. Wilson*, 149 Ill. App. 3d 1075, 1079 (1986).

The State argues that the defendant was not prejudiced by the exclusion of these statements because there was a factual basis to support the jury's verdict on the alternate theory of accountability. We disagree. The jury in the instant case was instructed that the defendant could be held responsible for the conduct of another if he knowingly solicited, aided, abetted, agreed to aid, or attempted to aid another person in the commission of the offense. IPI Criminal 3d No. 5.03. For the reasons already discussed, we believe that the excluded evidence was important for the jury to consider in making the determination as to the degree of the defendant's participation in the offense and whether he could be held accountable for Montoya's conduct. As noted by the defendant, a person's mere presence or acquiescence is not sufficient to render that person accountable for the acts of another. *People v. Evans*, 87 Ill. 2d 77, 83 (1981).

The State also argues that the defendant was not prejudiced by the trial court's ruling because the jury was permitted to consider the prior statements for impeachment purposes. In certain contexts, the admission of prior inconsistent statements for impeachment purposes has been found to minimize any prejudice caused by the failure to admit the evidence substantively. See *People v. Whitelow*, 215 Ill. App. 3d 1, 6-7 (1991). However, we note that in most of these cases the prior statements were found to be duplicative of the other evidence before the jury or the statement concerned a trivial matter. *Whitelow*, 215 Ill. App. 3d at 6-7; *Jefferson*, 260 Ill. App. 3d at 910-11.

In the instant case, we agree with the defendant that the prior inconsistent statements were crucial to his defense theory. We decline to speculate as to the weight the jury gave the statements during deliberations and instead determine that the defendant was entitled to have the statements admitted substantively as permitted under

the statute. See *People v. Wilson*, 149 Ill. App. 3d 1075, 1078-79 (1986). The clear benefit of being able to use such statements as substantive evidence is that it places such testimony on an equal footing with the other evidence admitted at trial, making it more persuasive in the eyes of the jury. *Wilson*, 149 Ill. App. 3d at 1078-79. Additionally, as substantive evidence, the defendant can then use the statements more extensively during closing argument in an attempt to convince the jury of his defense theory. *Wilson*, 149 Ill. App. 3d at 1078-79. The loss of this advantage was critical to the defendant's defense and resulted in substantial prejudice. We therefore conclude that the defendant is entitled to a new trial in which the prior statements are admitted substantively.

As our resolution of this issue controls our disposition on appeal, we need not consider the defendant's sentencing argument.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

McLAREN and RATHJE, JJ., concur.