**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 210366-U

Order filed January 26, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-21-0366 Circuit No. 19-CF-366 |
| DOYLE EUGENE NELSON, JR., | ) ) | Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Justice Davenport concurred in the judgment.
Justice Brennan dissented.

**ORDER**

¶ 1    *Held*: (1) The admission of defendant's interrogation video did not constitute reversible plain error nor was counsel ineffective for failing to move to suppress it; (2) defense counsel's failure to cross-examine State's occurrence witness with her prior statement was a strategic decision that did not result in ineffective assistance; (3) the court did not abuse its discretion in admitting defendant's jail phone call; however (4) the trial court's error in admitting defendant's text messages warrants a new trial.

¶ 2    A jury found defendant, Doyle Eugene Nelson, Jr., guilty of felony murder, and the trial court sentenced him to 55 years in prison. Defendant appeals, challenging the admission of

evidence at trial, claiming counsel was ineffective, and arguing that his sentence was impermissibly disparate compared to his codefendant's 45-year term. We reverse defendant's conviction, finding the trial court erred in admitting defendant's text messages, and remand for a new trial.

¶ 3                                                    I. BACKGROUND

¶ 4        The State charged defendant with two counts of first degree murder. Count 1 alleged that on June 12, 2019, defendant shot Zarious Fair while attempting to commit armed robbery (720 ILCS 5/9-1(a)(3) (West 2018)). Count II alleged that he did so knowing his acts created a strong probability of death or great bodily harm (*id.* § 9-1(a)(2)).

¶ 5        The State only tried defendant on count I, felony murder. At the first trial, Tanasia Boone testified that defendant and his fourteen-year-old friend, Z.M., approached her and her boyfriend, Fair, as they were walking to McDonald's. She thought they wanted to fight Fair, so she took his phone from his pocket and held onto it. Defendant checked Fair's pockets by "patting him down." Z.M. then pulled out a gun and shot Fair several times. Both Z.M. and defendant ran away.

¶ 6        The jury viewed defendant's interrogation video. The parties experienced difficulty producing an audible recording. While the video played in court, one juror stated: "It's indecipherable. It's not a volume level. It's indecipherable." The trial court considered excluding it because of poor sound quality. After several discussions, the parties agreed to give the video to the circuit court's technology support staff to see if the audio issues could be corrected. A copy of an improved video was later admitted. Although background noise still existed, both parties agreed that the audio on the edited copy was at least comprehensible. At defense counsel's encouragement, the jury watched the video again. By agreement of the parties, the copy was also

provided to the jury to review during deliberations. The jury was unable to reach a unanimous verdict, and the trial court declared a mistrial.

¶ 7     At the second trial, defense counsel moved *in limine* to bar the State from introducing evidence of text messages on defendant's cell phone from April 2019 in which defendant and others mentioned planning robberies and using guns. Counsel argued that the texts were irrelevant, prejudicial, and lacked proper foundation. The State maintained that defendant authored the texts in the exhibit and they were relevant to show knowledge, intent, and lack of mistake. The court found the texts admissible and denied defendant's motion.

¶ 8     Testimony revealed that officers reported to the scene around 4 p.m. on June 12, 2019, to find Z.M. shot and lying on the sidewalk. Boone was standing next to Fair and was "hysterical." She told police she knew the two males who confronted Fair from social media. She opened her Facebook account and showed detectives the Facebook profile for both Z.M. and defendant, identifying Z.M. as the one with the gun and defendant as the other person involved. Detective Hulse attempted to recover defendant's Facebook page when he returned to the police station but he was unable to find defendant's profile.

¶ 9     Boone testified that she and Fair were walking to McDonald's when Z.M. and defendant came up behind them. They confronted Fair and "tried to rob him and shot him." Then they ran off together. Before Z.M. shot Fair, defendant patted him down and checked his pockets. She thought they were going to fight so she took Fair's cellphone for safekeeping. Z.M. and defendant did not take anything from her before they ran away.

¶ 10    On cross-examination, Boone admitted that the incident happened "very quickly." When Z.M. first walked up, he said, "Up your shit." At that point, she "figured that they were going to fight," which is why she took Fair's cellphone. Neither Z.M. nor defendant tried to take the

3

phone from her or her purse. She admitted that she knew Z.M. Two or three months earlier, Z.M. tried to initiate a romantic relationship with her, and she turned him down. She did not know if Z.M. and Fair were "beefing," which she explained to mean fighting. Defense counsel then asked Boone if she remembered speaking with detectives immediately after the shooting and telling them that Z.M. and Fair "were beefing a long, long time ago." She responded that she did. On redirect, Boone agreed that Z.M. shot Fair immediately after defendant patted him down.

¶ 11     The parties stipulated to surveillance video from a nearby grocery store that was published to the jury. The video depicted Fair and Boone walking on a sidewalk, passing the grocery store, and turning onto Second Street. Z.M. and defendant are shown walking about 30 seconds behind them and following Fair and Boone down Second Street.

¶ 12     The court admitted defendant's interrogation video without objection from defense counsel. After beginning the video, an issue arose with the video equipment and the State requested a short recess. After the court excused the jury, it expressed concern that the video "has screeching all of the time in the background" and the jury might not be able to hear what the defendant and the defectives are saying. Defense counsel agreed that the audio was problematic but indicated that the technology support staff had been able to improve the quality of the video and encouraged its admission. Counsel suggested that the court inform the jury that the video had been admitted, that the quality was poor, and that a copy of the video would be made available for them to review during deliberations.

¶ 13     The court admitted both the original video and the copy and published them to the jury. Detective Scott Hulse, one of the officers who interviewed defendant, testified to its contents as the enhanced copy played. At the beginning of the interview, Detective Hulse read defendant his *Miranda* rights. Defendant interrupted him and asked what would happen if he did not answer

4

the questions. Hulse answered, "Well, you're gonna be charged with first-degree murder." Defendant paused, and Hulse continued, "It can happen. I guess what I'm saying is-- I'm not pointing the finger at you for anything. I'm investigating a criminal incident and your name has come up during the course of the investigation. So I have to read you your rights to even ask you anything other than your name, address, and phone. *** Does that make sense now?" Defendant responded, "Yeah," and Hulse continued to read the *Miranda* warnings. When Hulse finished, defendant stated that he understood his rights and agreed to talk to the detectives.

¶ 14        Initially, defendant explained that he and Z.M. were walking down the street to get money from defendant's girlfriend. At some point, defendant "broke off " from Z.M. He only heard gunshots from a distance. He claimed he was not with Z.M. when Z.M. shot Fair. The detectives responded that they believed defendant was lying and they wanted to hear the truth. Defendant subsequently denied firing the gun but admitted that he was with Z.M. He stated that Z.M. was "supposed to go, I guess, rob little guy's phone." Z.M. told defendant that he was going to "poke him," meaning rob him. Defendant said, "no bro, you tweakin'," and told Z.M. that he was going to "party out." Z.M. continued to follow Fair, so defendant chased after him and told him to calm down. Z.M. already had his gun out. Defendant said, "Bro, back up." Z.M. pushed defendant aside and fired. Defendant stated that there "wasn't no stoppin' [Z.M.]" and "I [didn't] know he was going to do that." Defendant denied checking Fair's pockets or patting him down. He stated that he tried to push Z.M. aside and said, "no," but "little dude" reached for the gun and Z.M. shot him. Defendant told Z.M. to back up and calm down but Z.M. continued shooting, possibly three or four times. After the shooting, defendant and Z.M. went different directions. Defendant changed his clothes and went to a friend's house, and Z.M. joined him there later.

5

¶ 15       At the end of the interview, defendant again stated that he was trying to stop Z.M. and he was in shock after the shooting. He admitted that he deleted his Facebook page that same day, shortly after Z.M. shot Fair.

¶ 16       The detectives left the room but returned later and continued to question defendant. Defendant again denied patting down Fair. He states that when Z.M. first mentioned his intent to rob Fair, defendant told him, "No, you need to calm down." One of the detectives reminded defendant that he was involved in a robbery and had every opportunity to leave. Defendant responded, "Right, but I was trying to stop him."

¶ 17       Officers forensically examined defendant's cell phone using Cellebrite, an electronic data extraction program. A police department sergeant testified regarding the functionality of the Cellebrite program and the extraction process. Over defense counsel's renewed objection, the court admitted the exhibit of a text message exchange between defendant, Z.M. and several other individuals that occurred on April 9, 2019, and April 10, 2019. In the text messages, defendant discussed "licks," "pipes," and "weed." Defendant also talked about collecting money from everyone for a "pipe" and mentioned a "meat market" that might have money in the register or under the counter. When asked about the meaning of the terms used in the text messages, Detective Hulse explained that "licks" referred to robberies and "pipes" referred to firearms. He testified that the discussion involved the organization of a street-level robbery to get money or more guns and that defendant and Z.M. were active participants in the conversation.

¶ 18       The trial court also admitted a recorded telephone call that defendant made at the Peoria County Detention Facility. Special projects analysist Christopher Schachtrup described how the phone system at the county jail operated. He then identified State's exhibit No.20 as a phone call defendant made while in the facility. Schachtrup used defendant's name and booking number to

6

identify the call. Schachtrup also used defendant's four-digit pin to further identify the source of the call. Detective Hulse also identified defendant's voice as one of the voices on the call. The recording was admitted without objection from defense counsel and published to the jury. During the 30-second recording, defendant asked the other person on the line why Z.M. is trying to make it seem like defendant made him shoot Fair. He told the listener that he was going to be indicted the following day and that a key witness could identify Z.M. as the shooter. At the end of the phone call, defendant stated, "The most I'm going down for is robbery."

¶ 19     The State rested. The defense did not present any evidence. Citing defendant's videotaped interview, defense counsel asked the court to instruct the jury on withdrawal from the promotion or facilitation of the offense using Illinois Pattern Jury Instruction, Criminal, No. 5.04 (4th ed. 2000) (Responsibility for the Act of Another-Withdrawal) (hereinafter IPI Criminal No. 5.04). The court refused, finding no evidence to justify the instruction.

¶ 20     During closing arguments, the State maintained that defendant was accountable for Fair's murder because he participated in an attempted robbery and reminded the jury that defendant did not leave, say no, or disassociate himself from Z.M. Defense counsel argued that the evidence did not support the offense of attempt robbery but instead showed that Z.M. wanted to fight Fair over a personal matter. Counsel referenced defendant's interrogation statement and directed the jury's attention to the portion of the video in which defendant denied patting down Fair several times. He also noted that defendant immediately responded, "no," when the detective asked him if he patted the victim down. Counsel encouraged the jury to replay the video and consider defendant's "convincing" and "credible" demeanor.

7

¶ 21 The jury found defendant guilty of first-degree murder. Defendant moved for a new trial, arguing that the court erred by denying his motion *in limine* concerning the text messages and by refusing to give the withdrawal jury instruction. The court denied defendant's motion.

¶ 22 In considering an appropriate sentence, the trial court recognized that defendant did not fire the shots that killed Fair. However, the court noted that defendant was an adult and showed little rehabilitative potential. After considering the factors in mitigation and aggravation, the court imposed a sentence of 55 years in prison. In denying defendant's motion to reconsider, the court noted defendant had little rehabilitative potential and declined to reduce his sentence.

¶ 23                                    II. ANALYSIS

¶ 24                          A. Defendant's Interrogation Video

¶ 25 Defendant first argues that the trial court erred by admitting defendant's interrogation video. Defendant admits forfeiture of this issue but asks us to reverse as plain error or as ineffective assistance of counsel.

¶ 26 "[A] conviction based 'in whole or in part, on an involuntary confession, regardless of its truth or falsity' violates a defendant's constitutional rights." *People v. Hughes*, 2015 IL 117242, ¶ 31 (quoting *Miranda v. Arizona*, 384 U.S. 436, 464 n. 33 (1966)). Before defendants may be subjected to custodial interrogation, they must be informed, among other things, of their right to remain silent and their right to counsel and they must make a knowing and intelligent waiver of those rights. *People v. R.D.*, 155 Ill. 2d 122, 142 (1993). The giving of *Miranda* warnings and a subsequent knowing and intelligent waiver of *Miranda* rights are prerequisites to the admissibility of any statement made by a defendant. *Id.*

¶ 27 In determining whether a confession is admissible, "[t]he ultimate test" is voluntariness. (Internal quotation marks omitted.) *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).

Relevant factors to consider include: (1) the defendant's age, intelligence, background, experience, education, mental capacity, and physical condition at the time of questioning; (2) the duration and legality of the detention; and (3) whether there was any physical or mental abuse by the officers, including threats or promises. *Hughes*, 2015 IL 117242, ¶ 31. One factor is not dispositive; the voluntariness of an inculpatory statement depends on the totality of the circumstances. *People v. Salamon*, 2022 IL 125722, ¶ 81.

¶ 28        Section 114-11 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/114-11 (West 2020)) provides a statutory means by which defendants can challenge the admissibility of assertedly involuntary statements. Under section 114-11(a), "[p]rior to the trial of any criminal case a defendant may move to suppress as evidence any confession given by him on the ground that it was not voluntary." *Id.* § 114-11(a). The statute requires that the motion be in writing and "state facts showing wherein the confession is involuntary." *Id.* § 114-11(b). If the motion alleges facts indicating that the statement was not made voluntarily, the trial court is required to conduct a hearing on the merits to determine voluntariness. *Id.* § 114-11(c).

¶ 29        Where the defendant challenges the admissibility of an inculpatory statement by filing a motion to suppress, the State bears the burden of proving the statement was voluntary by a preponderance of the evidence. *Id.* §114-11(d). If, however, a defendant fails to challenge the voluntariness of his confession, such evidence is admissible at trial and the defendant cannot challenge the voluntariness of his statement on direct appeal. See *Hughes*, 2015 IL 117242, ¶¶ 45-47 (defendant's failure to challenge admissibility of his confession at trial precluded consideration of the matter on appeal).

¶ 30        "It is well-established that the trial court has no duty to *sua sponte* exclude evidence when a party fails to make an objection." *People v. Smith*, 2012 IL App (1st) 143728, ¶ 60.

9

Moreover, failure to object at trial or raise a claim in a posttrial motion denies the opposing party and the trial court the opportunity to fully consider the issue. *Hughes*, 2015 IL 117242, ¶¶ 38-39. On review, we should decline to answer a question for which no adequate record has been developed due to a party's chosen trial strategy. See *People v. White*, 2011 IL 109689, ¶ 143 (defense counsel's failure to move to suppress lineup evidence resulted in forfeiture on review because lack of evidence skewed record on appeal). As our supreme court noted in *Hughes*:

> "By declining or failing to raise these claims below, defendant deprived the State of the opportunity to challenge them with evidence of its own, he deprived the trial court of the opportunity to decide the issue on those bases, and he deprived the appellate court of an adequate record to make these determinations. To consider such claims preserved would also multiply litigation by motivating parties to address at trial all conceivable arguments that might later be made and by forcing the trial court to consider not only the arguments made by counsel, but all arguments counsel might have made." *Hughes*, 2015 IL 117242, ¶ 46.

¶ 31    Here, defendant acknowledges forfeiture, but encourages us to review his claim as plain error. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (forfeiture may only be excused if defendant establishes plain error). The plain error rule permits a reviewing court to consider a forfeited error "when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).

10

¶ 32        Under either prong of the plain error rule, the burden of persuasion remains on the defendant (*People v. Bowman*, 2012 IL App (1st) 102010, ¶ 30), and the first step in the analysis is to determine whether any error occurred (*People v. Ammons*, 2021 IL App (3d) 150743, ¶ 45). If no clear and obvious error occurred, plain error review is not available. *People v. Keene*, 169 Ill. 2d 1, 17 (1995).

¶ 33        In this case, defendant argues that clear and obvious error occurred because his *Miranda* waiver was invalid, making his statement involuntary and therefore inadmissible at trial. Defendant's argument, however, does not establish that an error occurred where he did not challenge the voluntariness of his statement at trial and encouraged the court to admit it. Where a party requests and affirmatively agrees to proceed at trial in a particular manner, he cannot claim prejudice as a result. *Ammons*, 2021 IL App (3d) 150743, ¶ 20. Plain error review of an invited error is precluded on appeal. See *id.*; see also *People v. Carter*, 208 Ill. 2d 309, 319 (2003) (under invited error doctrine, accused cannot request to proceed in one manner and then contend on appeal that the course of action resulted in error).

¶ 34        Defendant claims he did not "invite" the error because the State moved to admit the exhibit, not defense counsel. However, that does not negate the fact that counsel agreed to admitting the enhanced video statement and encouraged the court to allow the jury access to the video during deliberations. More important, counsel failed to file a motion to suppress the video statement, thereby depriving the court of the opportunity to consider the issue and make a factual finding or legal determination after fully considering the evidence. For these reasons, we conclude that the admission of the interrogation was not error, let alone reversible plain error.

¶ 35        Defendant argues that the appellate court has granted plain error relief for an unpreserved claim of an invalid *Miranda* waiver in *People v. Kadow*, 2021 IL App (4th) 190103,

11

and we should do the same here. However, *Kadow* is easily distinguishable from our circumstances. There, defense counsel filed a motion to suppress challenging the voluntariness of defendant's in-custody statement. In reviewing the issues on appeal, the court noted that defendant had not raised the invalid nature of defendant's *Miranda* waiver but had claimed that his statement was not voluntary due to his intellectual disability. Because the court found the *Miranda* waiver prejudiced the defendant, the appellate court chose to address the issue under the plain error doctrine. *Id.* ¶ 17. In our case, defendant did not file a motion to suppress challenging the voluntary nature of defendant's interrogation, in general or otherwise. Thus, the issue was not properly preserved for review and plain error does not apply.

¶ 36    Alternatively, defendant claims counsel was ineffective for failing to challenge the video's admission. The familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims of ineffective assistance of counsel. A defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. *Id.* at 694. Matters of trial strategy are generally immune from ineffective assistance of counsel claims. *People v. Manning*, 241 Ill. 2d 319, 327 (2011). Failure to satisfy either prong precludes a finding of ineffectiveness. *People v. Veach*, 2017 IL 120649, ¶ 30.

¶ 37    Here, defendant denies that defense counsel's actions were strategic. We disagree. The evidence presented by the State tended to show that Fair and Boone were walking down Second Street when defendant and Z.M. approached. Boone testified that defendant checked Fair's pockets, after which Z.M. shot Fair. Detectives compared social media photos shown to them by Boone with surveillance video from the grocery store and identified defendant and Z.M.

12

following Boone and Fair minutes before the shooting. The only evidence at trial rebutting Boone's testimony that defendant patted down the victim was defendant's own denial in the interrogation video. Defense counsel's decision to allow the admission of the only evidence contradicting the claim that defendant and Z.M. attempted to rob Fair was not unreasonable. His decision certainly supported his defense theory that defendant did not know about the robbery. We find counsel's use of the interrogation video was a matter of trial strategy that fell well within the standard of objective reasonableness required under *Strickland*.

¶ 38                                B. Boone's Prior Testimony

¶ 39        Defendant argues that trial counsel was ineffective because he failed to introduce Boone's prior inconsistent testimony as substantive evidence to impeach her.

¶ 40        Section 115-10.1 of the Criminal Procedure Code provides for the substantive admissibility of prior inconsistent statements in criminal cases. 725 ILCS 5/115-10.1 (West 2020); *People v. Zurita*, 295 Ill. App. 3d 1072, 1076 (1998). A determination of whether a witness's prior statement is inconsistent with his or her present testimony is left to the sound discretion of the trial court. *People v. Flores*, 128 Ill. 2d 66, 87-88 (1989). "[A] prior statement of a witness does not have to directly contradict the testimony given at trial to be considered 'inconsistent' within the meaning of section 115-10.1." *Zurita*, 295 Ill. App. 3d at 1076. But it must have some tendency to contradict a witness's testimony to be inconsistent. *People v. Hernandez*, 319 Ill. App. 3d 520, 532 (2001). The test to determine whether a prior statement is sufficiently inconsistent to permit its utilization is whether the statement has "a reasonable tendency to discredit the direct testimony on a material matter." *People v. Williams*, 147 Ill. 2d 173, 244 (1991). "[S]ection 115-10.1 does not *require* a prior inconsistent statement to be used

13

as substantive evidence." (Emphasis in original.) *People v. Mason*, 324 Ill. App. 3d 762, 766 (2001).

¶ 41    To prevail on an ineffective assistance of counsel claim, a defendant must prove that his attorney's representation fell below an objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Strickland*, 466 U.S. at 688 (1984). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* at 694. Under the first prong, a defendant must overcome the strong presumption that counsel's action or inaction was based on sound trial strategy. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 83. Cross-examination is generally a matter of trial strategy and will not, on its own, support an ineffective assistance claim. *People v. Salgado*, 263 Ill. App. 3d 238, 246 (1994).

¶ 42    Here, we decline to hold that counsel's failure to use Boone's earlier testimony as substantive evidence amounts to ineffective assistance of counsel. Boone's testimony at the second trial was not inconsistent with her previous testimony. At the second trial, Boone testified that she was walking with Fair and that two people came up behind them. The prosecutor then asked: "And what happened when those two people came up from behind you?" Boone responded: "They tried to rob him and shot him." At the first trial, Boone stated: "Two boys came up from behind us, and then one of them checked his pockets and said, 'Up your shit,' and then the other boy shot him because he didn't have anything." Essentially, Boone testified that the offenders tried to take something from Fair at both trials.

¶ 43    Defendant contends that Boone's testimony at the first trial was inconsistent with her testimony at the second trial because she "never mentioned the notion of an attempted robbery or theft" in the first trial. However, a common sense reading of Boone's testimony at the first trial

14

conveys the circumstances of an attempted robbery. Her statement that someone "checked his pockets" and that Fair was shot "because he didn't have anything" describes the same incident as the words she used in the second trial –"They tried to rob him and shot him." That Boone failed to use the term "rob" in the second trial is not impeaching where the gist of her testimony in both trials indicated that defendant and Z.M. attempted to take something from Fair before shooting him. Where there is little substantive value in the prior statement, we decline to hold that counsel's failure to use Boone's earlier testimony as substantive evidence amounts to ineffective assistance of counsel. See *Williams*, 147 Ill. 2d at 242-43 (counsel was not ineffective for failing to use prior inconsistent statement where substantive value of witness's prior testimony when viewed in context was not great).

¶ 44     Further, counsel's decision not to use the prior statement to impeach Boone was a matter of sound trial strategy. The alleged inconsistency here is that Boone used the words "tried to rob" at one trial while describing the act of attempted robbery at the second. Neither would be evidence to support a defense strategy showing that no attempted robbery occurred. Instead, had counsel tried to impeach Boone, the jury would have heard Boone's conclusion that defendant and Z.M. tried to rob Fair as well as her testimony in the first trial describing the specific acts that led her to conclude that they were trying to rob him. Thus, counsel's decision not to pursue impeachment with Boone's prior statement was reasonable. Defendant was not denied effective assistance of counsel.

¶ 45                                    D. Jail Phone Call

¶ 46     Next, defendant claims that the trial court abused its discretion by admitting the recording of his jail phone call because it was irrelevant and its probative value was outweighed by its prejudicial effect. Defendant acknowledges that the recording was entered into evidence without

15

objection but asserts that the conditions for plain-error review are satisfied. Alternatively, he claims counsel was ineffective for failing to challenge the admission.

¶ 47    Relevant evidence is admissible at trial if it has a tendency to make the existence of any material fact more probable or less probable than it would be without the evidence. See Ill. R. Evid. 401 (eff. Jan. 1. 2011). The trial court has discretion to decide whether evidence is relevant and admissible. *People v. Amaya*, 255 Ill. App. 3d 967, 971 (1994).

¶ 48    In light of the charge in this case, the jail phone call was relevant and admissible. Defendant was charged with felony murder under a theory of accountability for the shooting death of Fair during an attempted robbery. On the recorded call, defendant explained that he was going to be indicted the following day, that a "key witness" would identify Z.M., and that the most defendant would "go down for" was robbery. The phone call evidence was relevant as it arguably demonstrated defendant's belief he participated in a robbery and to discount his claim that he did not know Z.M. was planning to rob Fair. Defendant's phone call comment that the most he was "going down for is robbery" tended to make the existence of defendant's claim that he was not involved in the planned robbery less probable than it would be without the evidence. Thus, the trial court did not err in admitting it.

¶ 49    We further reject defendant's argument that counsel was ineffective for failing to object to the admission of the call. In satisfying the first prong, defendant must show that "his defense counsel's performance was deficient in that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." (Internal quotation marks omitted.) *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998). As discussed, defendant's jail phone call was relevant and admissible. Thus, had counsel raised an objection, he would not have prevailed in excluding it. Accordingly, defense counsel was not ineffective for

16

failing to challenge the admission of the jail phone call where the call was relevant and an object would have been meritless. See *People v. Edwards*, 195 Ill. 2d 142, 165 (2001) ("Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless objection."); *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 95 (defense counsel is not required to make futile objections in order to provide effective assistance).

¶ 50                                D. Text Messages

¶ 51        Defendant maintains that the trial court erred in admitting his text messages from April 2019 because they were irrelevant and unfairly prejudicial. On this issue, we agree.

¶ 52        Relevant evidence is admissible at trial, while evidence that is not relevant is inadmissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence. Ill. R. Evid. 401 (eff. Jan. 1, 2011). Evidence that is relevant may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice *** [.]" Ill R. Evid. 403 (eff. Jan. 1, 2011). For example, relevant evidence may be excluded if it threatens to confuse the issues or mislead the jury, or where its admission may cause undue delay, waste time, or present cumulative evidence. See *id.*

¶ 53        Other crimes evidence is generally inadmissible if offered to demonstrate propensity to commit the charged offense. Ill. R. Evid. 404(a), (b) (eff. Jan. 1, 2011); see also *People v. Pikes*, 2013 IL 115171, ¶ 11. "Courts generally prohibit the admission of this evidence to protect against the jury convicting a defendant because he or she is a bad person deserving punishment." *People v Donoho*, 204 Ill. 2d 159, 170 (2003). However, such evidence may be admissible to prove motive, intent, identity, absence of mistake or accident, or *modus operandi*. Ill. R. Evid.

17

404(b) (eff. Jan. 1, 2011). It may also be admissible to establish a common plan or design, or the existence of a conspiracy. *People v. Cerda*, 2021 IL App (1st) 171433, ¶ 97.

¶ 54     To meet the relevancy threshold, the proponent of other crimes evidence must show similarity to the offense being tried. In other words, evidence of another crime "may be used only when the other crime has some threshold similarity to the crime charged." *People v. Bartall*, 98 Ill. 2d 294, 310 (1983). While the degree of similarity required may vary, depending on the relevant purpose of the evidence, general areas of similarity will suffice when offered to prove the absence of an innocent frame of mind or the presence of criminal intent. See *People v. Burgess*, 176 Ill. 2d 289, 308 (1997) (prior acts of abuse toward child were admissible to prove intent where defendant was charged with killing the child); *People v. Illgen*, 145 Ill. 2d 353, 375 (1991) (evidence of the defendant's prior assaults on wife helped prove defendant's intent to murder her).

¶ 55     Whether to admit evidence is within the trial court discretion. *Pikes*, 2013 IL 115171, ¶ 12. A reviewing court will reverse the trial court's decision only if it finds the trial court abused its discretion. *Id.*

¶ 56     Here, there is no similarity between the crimes discussed in the text messages and the attempted robbery that resulted in the first-degree murder charge outside of the general reference to robberies. There are no common victims or locations. Neither Boone nor Fair are mentioned in the text messages, and the group does not discuss Second Street or another specific location near that street. Nor do the text messages establish that defendant planned, agreed to, or committed a prior robbery. Defendant, Z.M. and others discuss "licks" in general, but they do not design a plan to commit a specific robbery or agree to the attempted robbery of Fair. Moreover, the text messages do not discuss committing robberies in the same manner as the attempted robbery in

18

this case. Nothing in the group text messages, which were sent more than two months before the offense in this case, provides similarities that would increase the relevance of the evidence. The text exchange contains only general, nonspecific references to robberies with temporal connection to the charged offense. We therefore conclude that the State was unable to bridge the "threshold of similarity" required for the admissibility of other crimes evidence and the trial court abused its discretion by allowing the State to use it. Accordingly, the trial court erred in denying defendant's motion *in limine* and admitting the text messages.

¶ 57 Where a trial court abuses its discretion by admitting evidence, reversal is warranted if the record indicates the existence of substantial prejudice. *People v. Jackson*, 232 Ill. 2d 246, 265 (2009). Here, the admission of the test messages was highly prejudicial because they would lead the jury to conclude that defendant committed robberies in the past, even though there was no evidence demonstrating that defendant had committed robberies previously. They would also lead the jury to conclude that defendant and Z.M. had a common plan to rob Fair, despite the lack of evidence showing that defendant and Z.M. had agreed to a common plan to rob Fair. In sum, the text messages would have invited the jury to conclude that defendant had committed robberies in the past, leading to the improper conclusion that he must have attempted to commit a robbery again in this case.

¶ 58 In this case, the evidence was closely balanced. Boone testified that defendant and Z.M. robbed and shot Fair, but she admitted that they did not take Fair's cellphone from her or her purse. According to Boone, defendant patted Fair down immediately before the shooting, but defendant adamantly denied doing so several times during his videotaped interrogation. In addition, Boone testified that she took Fair's cellphone from him because she believed Z.M. and Fair were going to fight. She also admitted that they fought in the past. Defendant also told

19

investigators that he had no idea Z.M. wanted to shoot Fair and that he tried to stop the whole incident by telling Z.M. to calm down and pushing him back. But he admitted that he ran away after the shooting and deleted his Facebook page. While a rational trier of fact could have convicted defendant of felony murder based on the admissible evidence in this case, the evidence arising from the irrelevant text messages dramatically strengthened the State's case. Given the highly prejudicial nature of this improperly admitted evidence, a new trial is warranted.

¶ 59    As a result, we reverse defendant's conviction for first degree murder and remand for a new trial. Since we find that the State presented sufficient evidence to sustain defendant's conviction, a retrial will not subject defendant to double jeopardy. See *People v. Moore*, 2020 IL App (1st) 182535, ¶ 29; see also *People v. Miller*, 2013 IL App (1st) 110879, ¶ 87 (citing *People v. Taylor*, 76 Ill. 2d 289, 309 (1979)).

¶ 60                              E. Other Arguments on Appeal

¶ 61    Defendant also argues that a withdrawal jury instruction was warranted and his 55-year sentence is an improper disparate sentence. Because we are reversing defendant's conviction and remanding for a new trial, both issues are moot. We therefore decline to consider defendant's arguments. See *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009) (as a general principle, we will not decide moot questions, give an advisory opinion, or consider an issue where the outcome will not or cannot be affected no matter what we decide).

¶ 62                              III. CONCLUSION

¶ 63    The judgment of the circuit court of Peoria County is reversed, and the cause is remanded for a new trial.

¶ 64    Reversed and remanded with directions.

¶ 65    JUSTICE BRENNAN, dissenting:

¶ 66    Though I agree with much of the majority's analysis, I respectfully dissent from its judgment reversing defendant's conviction.

¶ 67    As the majority acknowledges, other-crimes evidence is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crimes. *People v. Wilson,* 214 Ill. 2d 127, 135 (2005). Permissible purposes for the admission of other-crimes evidence include, as urged by the State here, knowledge, intent, and absence of mistake. See *id.* at 135-36. Relatedly, such evidence is also admissible to show that the act in question was not performed inadvertently, accidentally, involuntarily, or without guilty knowledge. *Id.* at 136. Where evidence of other crimes is offered for these purposes, it is admissible so long as it bears some threshold similarity to the crime charged. *Id.* In addition, the circuit court must weigh the probative value of the evidence against the prejudicial effect and should exclude the evidence, even if it is relevant, where the prejudicial effect substantially outweighs the probative value. *People v. Watkins,* 2015 IL App (3d) 120882, ¶ 45 (citing *Pikes,* 2013 IL 115171, ¶ 11).

¶ 68    As we observed in *Watkins*, "A determination of the admissibility of evidence is in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. [Citations.] Under the abuse of discretion standard, '[t]he reviewing court owes some deference to the trial court's ability to evaluate the impact of the evidence on the jury.' [Citation.]" *Id.* ¶ 35. Therefore, "[t]he threshold for finding an abuse of discretion [] is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. [Citations.] Reasonable minds can disagree about whether certain evidence is admissible without requiring a reversal of a trial court's evidentiary ruling under the abuse of discretion standard. [Citation.]" *Id.*

21

¶ 69    Although the admitted text messages here presumably did not relate to robbing Fair, the messages nevertheless demonstrate far more than the mere propensity to commit a crime. Defendant was on trial for felony murder predicated on his accountability for the criminal acts of Z.M. during the commission of an attempt robbery. The messages, as interpreted by Detective Hulse, demonstrate that defendant and Z.M. discussed committing robberies for the purpose of obtaining money or guns. The texts elucidate defendant's intent as he and Z.M. followed Fair and, more critically, discount defendant's contention that he did not know a robbery was going to happen. The texts are of course prejudicial, but they are especially probative in evaluating defendant's claim that he had no idea what Z.M. was up to as they followed Zair. In this context, their prejudicial effect did not substantially outweigh its probative value.

¶ 70    For these reasons, I would conclude that the trial court did not abuse its discretion in admitting the text messages and, therefore, defendant cannot demonstrate an error has been committed to support plain-error review. Defendant's conviction should be affirmed.